246 N.J. Super. 597 (1991)
588 A.2d 434
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD F. ROBERSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1991.
Decided March 22, 1991.
*599 Before Judges MICHELS, BRODY and D'ANNUNZIO.
William B. Smith, Assistant Deputy Public Defender, argued the cause for appellant (Wilfredo Caraballo, Public Defender, attorney; William B. Smith, of counsel and on the brief).
James E. Jones, Jr., Deputy Attorney General argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; James E. Jones, of counsel and on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
We now hold that the Legislature did not unconstitutionally invade the domain of the Supreme Court by enacting N.J.S.A. 2C:35-19, which establishes a pretrial procedure for rendering *600 admissible the results of a chemical analysis of suspected controlled dangerous substances.
Following a jury trial defendant was convicted of second-degree unlawful possession of more than one-half ounce but less than five ounces of cocaine, which included at least 3.5 grams of pure free base, with intent to distribute, a violation of former N.J.S.A. 2C:35-5a(1) and b(2),[1] and third-degree possession of the cocaine within one thousand feet of a school with the intent to distribute, a violation of N.J.S.A. 2C:35-5a and N.J.S.A. 2C:35-7. In addition to imposing penalties, fees and a revocation of defendant's driver's license, the judge sentenced defendant to concurrent terms of eight years imprisonment for the second-degree crime, four years to be served before parole eligibility, and five years imprisonment, three years to be served before parole eligibility, for drug-dealing near a school.
Defendant raises these arguments in his brief:
I THE COURT ERRED IN ADMITTING INTO EVIDENCE, PURSUANT TO N.J.S.A. 2C:35-19, A THREE PAGE CERTIFICATE OF ANALYSIS. (Partially Raised Below.)
A. N.J.S.A. 2C:35-19 Is An Unconstitutional Invasion Of The Supreme Court's Rule-Making Power. (Not Raised Below.)
B. The Admission Of The Laboratory Certificate Under N.J.S.A. 2C:35-19 Violated Defendant's Rights Under The Confrontation Clauses Of The Federal And State Constitutions. (Not Raised Below.)
C. The Admission Of The Laboratory Certificate Was Plain Error In That The Prosecution's Failure To Establish The Chain Of Custody Rendered The Certificate Irrelevant. (Not Raised Below.)
D. The Court Committed Plain Error By Admitting, Through The Laboratory Certificate, Scientific Evidence Without Foundation. (Not Raised Below.)
II THE COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT THE PRESENCE OF AT LEAST 3.5 GRAMS OF PURE FREE BASE COCAINE WAS A NECESSARY ELEMENT TO THE CRIME SET FORTH IN THE SECOND COUNT OF THE INDICTMENT. (Not Raised Below.)
III DEFENSE COUNSEL'S FAILURE TO PROPERLY EFFECT SERVICE UPON, OR AT LEAST INTERVIEW, A PURPORTED EYEWITNESS TO *601 DEFENDANT'S ARREST DENIED DEFENDANT HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. (Not Raised Below.)
IV THE COURT COMMITTED PLAIN ERROR IN ADMITTING THE TESTIMONY OF DETECTIVE MURRAY THAT HE HAD CONDUCTED A FIELD TEST UPON SUSPECTED COCAINE AND RECEIVED A POSITIVE RESULT. (Not Raised Below.)
V THE COURT ERRED IN ALLOWING THE PROSECUTOR TO ARGUE IN SUMMATION THAT THE JURY COULD DRAW AN INFERENCE AGAINST DEFENDANT DUE TO HIS FAILURE TO PRESENT TESTIMONY FROM DERRICK HICKS.
VI N.J.S.A. 2C:35-15, WHICH PROVIDES FOR MANDATORY DRUG ENFORCEMENT AND DEMAND REDUCTION (DEDR) PENALTIES TO BE IMPOSED ON ALL PERSONS CONVICTED OF OFFENSES ENUMERATED IN THE COMPREHENSIVE DRUG REFORM ACT OF 1986, N.J.S.A. 2C:35-15, ET SEQ., VIOLATES THE DEFENDANT'S RIGHTS TO EQUAL PROTECTION AND DUE PROCESS AND IS CRUEL AND UNUSUAL PUNISHMENT. (Not Raised Below.)
VII N.J.S.A. 2C:35-7 IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED TO THIS DEFENDANT. (Not Raised Below.)
VIII THE SENTENCE IMPOSED BY THE COURT WAS EXCESSIVE.
We agree with defendant's Point II: the trial judge committed plain error by failing to have the jury determine whether defendant possessed at least 3.5 grams of pure cocaine. We disagree with defendant's other points.
Detective Andrew Murray testified for the State that at around noon he and another detective were parked in an unmarked car surveilling a residential neighborhood where drug-dealing was suspected. He observed defendant park his car and then walk around a corner to a two-family house that was about 70 feet away from where Detective Murray and his partner were parked. Defendant walked to the rear of the house where he removed from his jacket a plastic bag containing what appeared to be vials commonly used to package crack cocaine. He placed the bag in a hole in the wall of a small building behind the house and then walked to the front of the house and onto its porch. Another man soon walked onto the porch and gave defendant what appeared to be cash. Defendant then went to where he had placed the plastic bag, removed one of the vials from it, returned to the porch, and gave the vial to the man. The man then walked away.
*602 Detective Murray radioed a report of these observations to three other detectives who were parked two and a half blocks away, and asked them to intercept the man who apparently had just purchased cocaine from defendant. Detective Roger Smith, one of the detectives in the other car, testified that the man did not come their way and they were unable to find him.
Detective Smith and the detectives with him then joined Detective Murray and his partner in arresting defendant. When arrested, defendant had $89 in his pocket. The detectives retrieved the plastic bag from the hole in the wall. It contained one hundred two vials of cocaine. A certified laboratory report stated that the cocaine weighed 15.96 grams, a little more than one-half ounce,[2] 14.65 grams being pure free base.
Defendant testified that he knew nothing of the plastic bag and its contents. The only person he saw on the porch, other than police who later arrested him, was Derrick Hicks. Hicks was on the porch holding a radio when defendant arrived. Defendant had come to the house so that Hicks could install the radio in his car. According to defendant, Hicks was still on the porch at the time of the arrest. Detective Murray testified that he saw no one on the porch with defendant other than the man to whom he had sold the cocaine. Hicks did not appear in court.
The only substantial issue on appeal that defendant raised at trial was the admissibility of the certified laboratory report. However, he did not make the same argument at trial that he makes now. Nevertheless, it is helpful to consider the issues raised by defendant at trial for a fuller understanding of the issues raised in his appeal.
Just before jury selection, defendant's attorney asked the trial judge to rule that the report was inadmissible because it did not recite how the contents of the vials had been weighed. *603 The assistant prosecutor advised the judge that the chemist who had weighed the cocaine was no longer employed by the State and was believed to be living and working in New York. He argued that defendant had ample notice that the State would rely on the report but had failed to give a timely notice that he objected to its admission in evidence and therefore, under N.J.S.A. 2C:35-19 (the statute), defendant waived the right to object at trial.
Defendant's attorney argued that there was good cause to relax the time limitations, as the statute permits, because the total weight of the cocaine stated in the report was so close to the minimum needed to constitute a second-degree crime. The relevant portion of the statute reads:
c. Whenever a party intends to proffer in a criminal or quasi-criminal proceeding, a certificate executed pursuant to this section, notice of an intent to proffer that certificate and all reports relating to the analysis in question, including a copy of the certificate, shall be conveyed to the opposing party or parties at least 20 days before the proceeding begins. An opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection and the grounds for the objection within 10 days upon receiving the adversary's notice of intent to proffer the certificate. Whenever a notice of objection is filed, admissibility of the certificate shall be determined not later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and specific grounds for that objection that the composition, quality, or quantity of the substance submitted to the laboratory for analysis will be contested at trial. A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate. The time limitations set forth in this section shall not be relaxed except upon a showing of good cause.
The assistant prosecutor represented to the judge that a week before trial he had met with defendant's attorney and in his presence telephoned the officer in charge of the laboratory to determine how the suspected cocaine had been weighed:
It was the person in charge of the laboratory. It's a sergeant from the State Police. He actually has the day-to-day responsibility for the running of the laboratory.
And he indicated that he was reading directly from the notes, that the method that was employed here was that ten vials were taken at random and tested to determine whether it was, in fact, cocaine. The vials were weighed and they arrived at a weight for each vial and [defendant's attorney] was writing the *604 weights. I was busy trying to keep up. I believe it was approximately .037 grams per vial. That was multiplied by 102 which is the total amount of vials because they are all of identical size and they arrived at a weight.
Some of the vials had tape on it. The tape was weighed. And the tape, the total weight of the tape, came out to .046 and multiplied by 11, because that's the amount of pieces that they had, and the weight of that tape was added to the weight of the vials.
The bulk vials were weighed with the powder in it and based on what the difference in those weights is how they determined the amount of powder or the amount of cocaine that was in those vials.
The judge permitted the certified report to be used in evidence.
Defendant does not now question whether the report is admissible under the statute. Rather, he challenges the validity of the statute itself based on his assumption that it creates a new exception to the rule against hearsay and therefore is a rule of evidence. He raises two arguments that proceed from that assumption.
First, he argues that the Legislature was without power to enact the statute because as a rule of evidence it could only be enacted lawfully pursuant to the procedure set forth in N.J.S.A. 2A:84A-33 to 39 for adoption of rules of evidence, which requires that the process be initiated by the Supreme Court. See State v. D.R., 109 N.J. 348, 352, 537 A.2d 667 (1988). Second, he argues that the statute denies a defendant his constitutional right of confrontation.
We need not consider these arguments because they are based on the erroneous assumption that the statute is a rule of evidence. As we said in State in the Interest of J.H., 244 N.J. Super. 207, 581 A.2d 1347 (App.Div. 1990), the statute is not a rule of evidence. Rather, it establishes a procedure by which "the State may ascertain before trial whether a defendant will object to the admission of a laboratory certificate and, if so, whether the certificate satisfies the tests of reliability set forth in [State v.] Matulewicz [, 101 N.J. 27, 499 A.2d 1363 (1985)]." Id. at 218, 581 A.2d 1347.
This case presents an especially good example of how the statute performs that salutary function. Defendant's attorney *605 not only failed to make a timely objection to the admissibility of the certificate after receiving the State's formal notice, but also failed to object after receiving from the State the details of the weighing procedures, which he did not demand be proved by admissible evidence until the jury was about to be selected. Not being a rule of evidence, the statute need not have been adopted pursuant to N.J.S.A. 2A:84A-33 to 39, and does not implicate the confrontation clauses of the United States and New Jersey constitutions. See J.H., supra.[3]
At oral argument, defendant's attorney contended that the statute is invalid even if it is a rule of procedure and not a rule of evidence, because under the Constitution the Supreme Court has exclusive jurisdiction to "make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." N.J. Const. of 1947 art. VI, § 2, para. 3.
The statute essentially establishes a pretrial procedure for stipulating a written drug-testing report into evidence. As acknowledged by the State at oral argument, the statute permits a defendant to decline to enter into the stipulation simply by giving timely notice of which fact or facts respecting the test the State must prove with admissible evidence. The Supreme Court has not promulgated a rule that establishes the manner by which parties may stipulate facts into evidence. We see no reason why the Supreme Court would object to the statute, whose provisions we conclude are fair and reasonable, and serve a legitimate governmental purpose. In these circumstances the Supreme Court does not insist on exercising its constitutional authority to the exclusion of the Legislature:

*606 Succeeding cases have made clear that while the judicial power is paramount and exclusive, it need not in every context or application be preclusive. Implicit in the decisional law is the distinction between the existence and the exercise of the judicial powers. The cases show that, although the constitutional authority of the Supreme Court over the judicial branch of government is preeminent, this does not mean that this authority must invariably foreclose action by the other branches of government. This is so particularly where the judicial power has not been exercised or fully implemented, and where such action by the other branches serves a legitimate governmental purpose and, concomitantly, does not interfere with judicial prerogatives or only indirectly or incidentally touches upon the judicial domain. [Knight v. Margate, 86 N.J. 374, 389-390, 431 A.2d 833 (1981) (Emphasis in original.)]
N.J.S.A. 2C:35-19 does not interfere with the judicial prerogatives of the Supreme Court. It is therefore constitutional even though it may affect the practice and procedure of the courts in the State.
We reject defendant's argument that the judge erred in permitting the assistant prosecutor to comment in his summation on the failure of Hicks to testify. In his summation the assistant prosecutor said:
... Hicks wasn't on that porch. And you know why Hicks isn't here, ladies and gentlemen? And I'm asking you to draw this inference because you have a right to draw inferences from the evidence. Here is the inference I'm going to ask you to make, to draw. Hicks didn't come in here to testify because Hicks wasn't on that porch. It never happened.
There is a basis in the evidence for the assistant prosecutor's comment. See State v. Hill, 47 N.J. 490, 499, 221 A.2d 725 (1966) (During summation counsel may discuss facts shown or reasonably inferable from the evidence.) Although defendant was apparently unable to subpoena Hicks, the jury knew from his testimony that he had asked Hicks to be a witness. The jury knew from other evidence that defendant's claim that he was at Hicks's home so that Hicks could install a radio in his car was belied by the fact that he had parked his car around the corner and several doors from Hicks's home. The assistant prosecutor's comment may nevertheless be taken as improperly inviting the jury to speculate on why Hicks did not testify. There may have been reasons other than an inability to corroborate defendant's testimony. If the comment was improper, *607 however, we are fully convinced that it was harmless. R. 2:10-2.
We have previously sustained N.J.S.A. 2C:35-7 and -15 against the challenges defendant raises in this appeal. See e.g. State in the Interest of L.M., 229 N.J. Super. 88, 550 A.2d 1252 (App.Div. 1988), certif. den. 114 N.J. 485, 555 A.2d 609 (1989); State v. Todd, 238 N.J. Super. 445, 570 A.2d 20 (App.Div. 1990); State v. Ogar, 229 N.J. Super. 459, 551 A.2d 1037 (App.Div. 1989). We adhere to the views we expressed in those opinions.
The trial judge overlooked having the jury determine whether the amount of cocaine defendant possessed included at least 3.5 grams of pure cocaine. The former statute raised the crime to the second degree only if the State can prove that fact beyond a reasonable doubt. See State v. Torres, 236 N.J. Super. 6, 13, 563 A.2d 1141 (App.Div. 1989). The error requires reversal of the conviction even though the State's evidence is uncontradicted. See State v. Fungone, 134 N.J. Super. 531, 535, 342 A.2d 236 (App.Div. 1975), certif. den. 70 N.J. 526, 361 A.2d 540 (1976). The jury was properly instructed respecting the then lesser included third-degree crime of possessing "less than 3.5 grams of the pure free base...." N.J.S.A. 2C:35-5b(3).
We are satisfied from a careful review of this record that the other issues raised are clearly without merit and require no discussion. R. 2:11-3(e)(2).
Defendant's conviction of third-degree possession of cocaine near a school with the intent to distribute is affirmed. His conviction of second-degree possession of more than one-half ounce but less than five ounces of cocaine, which included at least 3.5 grams of pure free base, with intent to distribute is reversed and that matter is remanded for a new trial. See State v. Weeks, 107 N.J. 396, 526 A.2d 1077 (1987) (defendant's conviction of first-degree robbery as an accomplice reversed and matter remanded for retrial, with correct instructions, to determine whether defendant shared criminal partner's purpose *608 to use a deadly weapon in committing the crime, an element of first-degree accomplice accountability.) In lieu of a new trial, the State may choose to have defendant sentenced for third-degree possession with intent to distribute one-half ounce or more of cocaine that included less than 3.5 grams of the pure free base, a violation of former N.J.S.A. 2C:35-5b(3).
NOTES
[1] An amendment to the statute, which became effective shortly after the date of the crime, eliminated the requirement that the State prove a minimum quantity of the pure free base. L. 1988, c. 44, § 2.
[2] An ounce is 28.350 grams.
[3] We held in J.H. that the confrontation clause barred receipt in evidence of a certified laboratory report containing the result of a chemical test for cocaine because the State had made no preliminary showing that the result was reliable under the Matulewicz criteria. There, however, the juvenile had not waived objection to admission of the report as defendant did here.