790 A.2d 144

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
TIMOTHY MILLER, DEFENDANT–APPELLANT.

Argued October 10, 2001—Decided January 23, 2002.

418

420

*Ruth Bove Carlucci*, Assistant Deputy Public Defender, argued the cause for appellant (*Peter A. Garcia*, Acting Public Defender, attorney; *Ms. Carlucci* and *Sondra Burke*, Designated Counsel, on the briefs).

*Mark P. Stalford*, Assistant Prosecutor, argued the cause for respondent (*John A. Kaye*, Monmouth County Prosecutor, attorney).

*Steven A. Yomtov*, Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*John J. Farmer, Jr.*, Attorney General, attorney).

The opinion of the Court was delivered by

LONG, J.

This appeal concerns *N.J.S.A.* 2C:35–19, a "notice and demand" statute that provides that upon the satisfaction of certain requirements, a laboratory certificate may be admitted into evidence in a drug case without the presence of the laboratory employee. More particularly, we are called on to determine whether the trial court denied defendant, Timothy Miller, his rights under that statute and under the Constitution when it admitted a laboratory certificate over his objection.

I

In 1997, Timothy Miller was arrested for a drug offense. A certified laboratory report (lab certificate), issued by the State Police Forensic Science Bureau, concluded that the item seized from Miller was cocaine. Miller was subsequently charged by indictment with one count of third-degree possession of a controlled dangerous substance, contrary to *N.J.S.A.* 2C:35–10a(1).

On May 29, 1998, Monmouth County Assistant Prosecutor Thomas J. Catley notified Miller's counsel, Adam Weisberg, by letter that the Prosecutor intended to proffer the lab certificate at trial pursuant to *N.J.S.A.* 2C:35–19c in place of producing a witness. A copy of the certificate was attached to the letter but none of the data underlying it was included.

On the same date, Weisberg wrote to Catley:

> Pursuant to *N.J.S.A.* 2C:35–19(c), and in reply to your Notice of Intention to Rely on the Laboratory Certificate, please be advised that this office objects to the admissibility of said certificate. The reason for said objection is that the certificate fails to address the nature and the condition of the equipment used in the analysis. Since the nature and the condition of the equipment used is unknown, it is likely that the analysis of the composition, quality and quantity of the substance submitted to the laboratory may be inaccurate, and may be contested at trial.
>
> Based on the foregoing objection, kindly advise the undersigned as to whether the State will request a Pretrial Hearing two (2) days before the trial, or will present the laboratory employee at the time of trial.

A copy of that letter also was forwarded to the trial court.

Weisberg never received a direct response to his letter. However, the Prosecutor's Office did forward to him the name of the

laboratory employee along with her *curriculum vitae,* an action that led him to believe that the State intended to call the lab employee as a trial witness as he had requested.

At trial, the State sought to introduce the lab certificate into evidence. Weisberg objected. Because the State had failed to respond to his demand letter or to ask for a hearing, he argued that the certificate was inadmissible under *State v. Kittrell,* 279 *N.J.Super.* 225, 652 *A.*2d 732 (App.Div.1995).

In response, the Assistant Prosecutor also claimed surprise:

Judge, that letter from Mr. Weisberg that he, referred to objecting to the lab series [is] not contained in my file [and] *I do not know whether my office has ever received it.* There is no indication in my file that my office has ever received it which is why it was never responded to.

I was relying on the fact that it was not responded to which is why I did not call the chemist who I was in touch with this morning and was available to testify but I was completely unaware and completely surprised that this letter is now in existence.

[Emphasis added.]

At a hearing outside the presence of the jury that focused on notice, an Assistant Prosecutor testified that "said notice is not contained in our case file. It is not in any of our filed correspondence on the trial team for either Judge Kennedy or Judge Labrecque. Beyond that, I can't speculate what happened to it. . . ."

Weisberg's secretary, Loretta Petrone, specifically recalled mailing the demand letter, inscribed with the Prosecutor's file number and the Indictment number, on May 29, 1998, with a copy to the court. She also acknowledged that it was the policy of her office to object to the admission of any lab certificate that was not accompanied by underlying reports and data. Ms. Petrone further indicated that the letter to the Prosecutor had not been returned by the post office.

After noting that it had received a copy of Weisberg's letter and that it found the testimony of both the Assistant Prosecutor and Petrone to be credible, the court allowed the lab certificate to be admitted without a hearing:

In this case I'm satisfied that the notice both was sent but was not received and was not contained in the prosecutor's file. Therefore, the State would not have been put on notice that this evidentiary issue was still at large, so as to ensure that either the preliminary hearing would take place or that the State would have a witness available to testify as to the accuracy of the test, what equipment was used, reliability of the certificate etc., etc.,. Also, no mention of such pretrial issue was set forth in the plea cutoff order marked as C–2. If it was[,] the State once again could have been on notice of the requirement for preliminary hearing or at least the necessity of having a witness available here for trial to testify as to the disputed reliability. No application to amend the pretrial or the plea cutoff order was made.

Number two, *State v. Kittrell,* the statute and other case law I've seen require the defendant to make more than just a vague and ambiguous objection to the admissibility of the certificate. In *State in the Interest of J.H.,* 244 *N.J.Super.* 207, 581 *A.*2d 1347 [ (App.Div.1990) ], the Appellate Division upheld the constitutionality of *N.J.S.A.* 2C:35–19 and held that "if defendant does object, he must state specific grounds of objections under the criteria of admissibility set forth in *State v. Matulewicz,* [101 *N.J.* 27, 499 *A.*2d 1363 (1985) ]." I do not find the defendant's, admittedly, standard letter of objections met this criteria of specificity.

The jury convicted Miller of possession of cocaine. His motion for a new trial based on the erroneous admission of the certificate was denied. He was sentenced to a custodial term and appealed.

The Appellate Division affirmed, on the basis that *N.J.S.A.* 2C:35–19c requires that the party contesting the admission of a lab certificate demonstrate that there is a "bona fide challenge to the composition, quality or quantity of the substance." Furthermore, the court observed that "unless specific grounds for objection are shown to exist, the laboratory certificate *shall* be admitted. No such showing was made here." *Ibid.* (citations omitted). The panel also concluded that even if it was error to admit the laboratory certificate in lieu of live testimony without a hearing, the error was harmless under Rule 2:10–2.

We granted certification limited to the issue of the trial court's admission of the laboratory certificate into evidence, 168 *N.J.* 290, 773 *A.*2d 1153 (2001), and allowed the Attorney General to participate as *amicus curiae.* We now reverse.

II

Miller argues that his objection letter was adequate and timely filed; that its effect was to put the State on notice that it needed

to produce the lab employee for trial or prove at a hearing why the certificate would suffice; and that the trial court's order allowing the admission of the lab certificate over his objection denied him his Sixth Amendment right to confront the witnesses against him. The State counters that where there is a challenge to the admissibility of a lab certificate, it is the challenging party who must make a threshold showing why the lab employee should be produced and that Miller failed in that duty, thus warranting admission of the certificate.

The Attorney General asks us "to make clear that if a defendant decides to object to the admissibility of a laboratory certificate, he must provide the specific grounds for his objections under the criteria of admissibility for laboratory reports as set forth by this Court in *State v. Matulewicz*, 101 *N.J.* 27, 499 *A.*2d 1363 (1985)," in order to necessitate an evidentiary hearing.

### III

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." *U.S. Const.* amend. VI. The New Jersey Constitution contains a cognate guarantee. *N.J. Const.* art. I, ¶ 10; *see also* Selma Rebecca Archer & Robert W. Stein, *Developments in State Constitutional Law, Criminal Procedure: Defendants' Rights*, 24 *Rutgers L.J.* 1229, 1267 (1992) (noting that "[w]hile the language of these state provisions may differ slightly from their federal counterpart, state courts have often concluded that the protection afforded by the state and federal constitutions are equivalent"). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing" in an adversarial proceeding. *Maryland v. Craig*, 497 *U.S.* 836, 845, 110 *S.Ct.* 3157, 3163, 111 *L.Ed.*2d 666, 678 (1990).

Although a literal reading of the Confrontation Clause would exclude the statements of any declarant not present at trial,

the right to confrontation has been interpreted to allow hearsay evidence to be admitted against a defendant under certain circumstances. Such evidence will pass constitutional muster where it either falls within a "firmly rooted" hearsay exception or "particularized guarantees of trustworthiness" assure its reliability. *Ohio v. Roberts,* 448 *U.S.* 56, 66, 100 *S.Ct.* 2531, 2539, 65 *L.Ed.*2d 597, 608 (1980); *State in the Interest of J.H., supra,* 244 *N.J.Super.* at 213–14, 581 *A.*2d 1347.

 A lab certificate offered to prove the composition, quality, or quantity of an alleged controlled dangerous substance is hearsay. Hence, in order to be admissible under the Confrontation Clause it must meet the abovementioned requirements. Namely, the party proffering such evidence must show that it either falls within a firmly rooted hearsay exception or that " 'particularized guarantees of trustworthiness' drawn from the totality of the circumstances" surrounding the preparation of the certificate exist. *Miller v. State,* 266 *Ga.* 850, 472 *S.E.*2d 74, 78 (1996) (citing *State in the Interest of J.H., supra* ).

 In *State v. Matulewicz, supra,* we detailed the way in which the proponent of a lab report could invoke the protection of two firmly-rooted hearsay exceptions, namely, the business entries exception (*N.J.R.E.* 803(c)(6)) and the public records exception (*N.J.R.E.* 803(c)(8)), thus avoiding Confrontation Clause concerns. Focusing on the burden on the proponent of the hearsay evidence, we stated:

> [P]roofs should be adduced to reflect the relative degrees of objectivity and subjectivity involved in the procedure; the regularity with which these analyses are done; the routine quality of each analysis; the presence of any motive to single out a specific analysis for the purpose of rendering an untrustworthy report, and the responsibility of each State Police chemist to make accurate and reliable analyses.
>
> [*Matulewicz, supra,* 101 *N.J.* at 30, 499 *A.*2d 1363.]

Those factors "are not intended to be exhaustive" and a trial court "may properly require proof regarding additional concerns as to the indicia of trustworthiness necessary to justify admissibility." *Id.* at 31, 499 *A.*2d 1363. Most importantly, regardless of the

particular hearsay exception involved, "concern for reliability remains paramount" in such determinations. *Ibid.; see also* Paul C. Giannelli, *The Admissibility of Laboratory Reports in Criminal Trials: The Reliability of Scientific Proof,* 49 *Ohio St. L.J.* 671, 700 (1988) ("The routine admission of laboratory reports can be justified only if the presumption of reliability that generally attaches to business and public records also applies to the reports.")

Although *Matulewicz* addressed the tests for admissibility under the evidence rules, those tests also "provide adequate 'indicia of reliability' to satisfy the requirements of the Confrontation Clause .... because the 'business entries' and 'public reports' hearsay exceptions ... are 'firmly rooted,' or alternatively, because the tests of admissibility set forth in *Matulewicz* provide 'particularized guarantees of trustworthiness.' " *State in the Interest of J.H., supra,* 244 *N.J.Super.* at 215, 581 *A.*2d 1347 (citations omitted)(citing *Idaho v. Wright,* 497 *U.S.* 805, 816, 110 *S.Ct.* 3139, 3147, 111 *L.Ed.*2d 638, 653 (1990)); *see also, Pickett v. Bowen,* 798 *F.*2d 1385, 1386 (11th Cir.1986)(stating that Confrontation Clause requires for admission of hearsay that there be "indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant"); *United States v. McClintock,* 748 *F.*2d 1278, 1291–92 (9th Cir.1984), *cert. denied,* 474 *U.S.* 822, 106 *S.Ct.* 75, 88 *L.Ed.*2d 61 (1985)(refusing to allow in government reports under business records exception because violated Confrontation Clause due to insufficient "indicia of reliability"); *United States v. Oates,* 560 *F.*2d 45, 80–82 (2d Cir.1977)(holding that chemist's report was inadmissible hearsay under federal rules of evidence because admitting report would raise "legitimate doubts regarding the constitutionality" of its introduction) (citations omitted). Thus *Matulewicz* provides the template for a hearing on admission of a lab certificate. Our research reveals no reported case, after our decision in *Matulewicz,* in which the required record regarding reliability was, in fact,

made.[1]

## IV

The issues presented in this case do not flow out of the *Matulewicz* hearing requirement itself but out of the procedures leading up to it. In 1987, the Legislature designed a procedure to streamline the trial of drug cases by weeding out, prior to trial, those cases in which scientific proof is not contested and in which a lab certificate may be admitted in lieu of expert testimony.

The Comprehensive Drug Reform Act prescribes that the certified results of a controlled dangerous substance analysis by a State Forensic Laboratory are admissible evidence of the "composition, quality, and quantity" of the substance tested provided that (1) the lab certificate meets certain criteria regarding the testing process to establish the certificate's reliability; and (2) a "notice and demand" procedure is satisfied. *N.J.S.A.* 2C:35–19.

The certificate must meet certain formal requirements, including the signature, under oath, of the laboratory employee who performed the analysis attesting to the results; a statement establishing "the type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscrib-

---

[1] Under *Matulewicz*, the burden is on the State to establish the scientific reliability of its testing procedures and equipment so that the results of those procedures may be admitted under either the business records or the public entries exception. *Matulewicz, supra*, 101 *N.J.* at 32, 499 A.2d 1363. However, even if the lab procedures are sufficiently reliable, in general, under the above mentioned hearsay exceptions, a defendant may nevertheless, after reviewing the lab certificate and accompanying reports, present reasons why the lab technician must be produced in his or her case. That possibility is recognized by *N.J.R.E.* 808, which codifies the principles set out in *Matulewicz:*

> Expert opinion which is included *in an admissible hearsay statement* shall be excluded if the declarant has not been produced as a witness unless the trial judge finds that the circumstances involved in rendering the opinion, including the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion, tend to establish its trustworthiness.
> [Emphasis added.]

er is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; and the nature and condition of the equipment used." *N.J.S.A.* 2C:35–19b. A party intending to proffer the certificate must convey "notice of an intent" to do so to the opposing party at least twenty days before the trial. *N.J.S.A.* 2C:35–19c. That notice must include a copy of the lab certificate. *Ibid.*

A party who objects to the admission of the certificate in turn

shall give notice of objection and the grounds for the objection within 10 days upon receiving the adversary's notice of intent to proffer the certificate. Whenever a notice of objection is filed, admissibility of the certificate shall be determined not later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and specific grounds for that objection that the composition, quality, or quantity of the substance submitted to the laboratory for analysis will be contested at trial. A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate.

[*N.J.S.A.* 2C:35–19c.]

*N.J.S.A.* 2C:35–19 is denominated as a notice and demand statute because it requires the party seeking to introduce a certified laboratory result, ordinarily the State, to give "notice" of its intent to so do and allows the defendant to "demand" that the State either produce the witness or prove why the certificate should be admitted despite its nature as hearsay. Jimmy Chen, *Notice and Demand Statutes: A Constitutional Response to the Evidence Crisis,* 8 *Kan. J.L. & Pub. Pol'y* 241 (1999).

The Assembly Judiciary Committee Commentary to the Comprehensive Drug Reform Act detailed the purpose of the notice and demand provision:

This section is designed to streamline trial practice by allowing the use of sworn laboratory certificates as an exception to the hearsay rule of evidence. Such certificates would be admissible in criminal and quasi-criminal cases in lieu of the live testimony of forensic chemists. This provision is intended to alleviate the burden imposed on State and county laboratory facilities by the necessity of having their employees travel throughout the State to make perfunctory court appearances in cases where the substance of their testimony is not genuinely in dispute.

. . . .

Subsection c. of this section prescribes the [notification] procedures to be followed when a party intends to use a laboratory certificate as evidence. . . . Along with this notice, the offering party must include not only a copy of the actual proffered certificate, but also all reports relating to the laboratory analysis in question. This procedure will ensure complete and prompt disclosure of all relevant information and will thereby allow the opposing party a fair opportunity to make an informed decision whether to contest the admissibility of the certificate.

This subsection also prescribes the procedures to be followed when an opposing party elects to object to the certificate's admission into evidence. The decision to admit a certificate in lieu of live testimony is vested in the court's discretion.

It is intended that the court ordinarily should admit the certificate unless it appears that the nature, quantity or purity of the tested substance is legitimately in dispute. Where it appears from the statement of objection that there is a legitimate factual dispute with respect to any relevant portion of the certificate, the court should deny admissibility of the certificate and require the State to produce the forensic chemist at trial.

[Assembly Judiciary Committee, Commentary to the Comprehensive Drug Reform Act (November 23, 1987) (as reprinted in Cannel, *New Jersey Criminal Code Annotated*, comment on *N.J.S.A.* 2C:35-19 (2001-02)).]

■ Like other notice and demand statutes, *N.J.S.A.* 2C:35-19 is intended to "protect the defendant's constitutional rights and yet relieve the prosecution of producing the analyst when scientific proof *is not a contested issue* in the case." Giannelli, *supra,* 49 *Ohio St. L.J.* at 700 (emphasis added); *see also* Sponsor's Statement, A. 202-3270, 2d Sess., at 56 (N.J.1987) (stating that legislation "allows the use of sworn laboratory certificates as an exception to the hearsay rule of evidence, in lieu of live testimony of forensic chemists . . . . to alleviate the burden imposed on State laboratory facilities by the necessity of having their employees involved in *perfunctory* court appearances") (emphasis added).

■ Despite the references in the legislative history to *N.J.S.A.* 2C:35-19 as a hearsay exception, the notice and demand statute does not fall into that category. See *State v. D.R.*, 109 *N.J.* 348, 371-75, 537 *A.2d* 667 (1988). "[T]he admissibility of a laboratory certificate under *N.J.S.A.* 2C:35-19 does not turn on a showing of its reliability, but rather on whether the conclusions contained therein 'will be contested at trial.'" *State in the Interest of J.H., supra,* 244 *N.J.Super.* at 216, 581 *A.2d* 1347 (quoting *N.J.S.A.* 2C:35-19c). It is the existence of a contest that compels the state

to produce a witness or show why such production is unnecessary under the Confrontation Clause. What *N.J.S.A.* 2C:35–19 provides is a "a procedural framework under which the State may ascertain before trial whether a defendant will object to the admission of a laboratory certificate and, if so, whether the certificate satisfies the tests of reliability set forth in *Matulewicz.*" *Id.* at 218, 581 *A.*2d 1347. It is a practical device "for stipulating a written drug-testing report into evidence .... [wherein] the statute permits a defendant to decline to enter into the stipulation simply by giving timely notice of which fact or facts respecting the test the State must prove with admissible evidence." *State v. Roberson,* 246 *N.J.Super.* 597, 605, 588 *A.*2d 434 (App.Div.1991). The facts referred to in *Roberson* are essentially the same in every case and arise out of the very nature of laboratory testing. They are the identity, composition, and weight of the tested substance. Under *N.J.S.A.* 2C:35–19, it is in connection with those facts individually or in combination that a defendant must raise a contest in order to avoid the admission of the lab certificate.

The effect of the procedure established by *N.J.S.A.* 2C:35–19 is rather straightforward: to cull out the cases that may require live testimony from, in our experience, the vast majority of cases in which the defendant does not oppose the admission of the lab certificate either because the focus of the defense is otherwise or because he or she may not wish to suffer the piling-on effect of a live witness when there is no true contest over the nature of the tested substance.

V

That portion of *N.J.S.A.* 2C:35–19 that allows the state to seek a stipulation from a defendant regarding the admissibility of a lab certificate is not problematic. There is simply no harm in asking a defendant, who has the right to refuse, to enter into a stipulation.

The question with constitutional implications arises from the language of the statute prescribing that

> a proffered certificate shall be admitted unless it appears from the notice of objection and specific grounds for that objection that the composition, quality, or quantity of the substance submitted to the laboratory analysis will be contested at trial.
>
> [*N.J.S.A.* 2C:35–19c.]

Based on that language, the prosecutor's claim, echoed by the Attorney General, is that a defendant has a duty to make a threshold showing, tied to the *Matulewicz* criteria, concerning why the laboratory certificate should not be admitted. Underpinning that claim appears to be the notion that the reference to "specific grounds" in *N.J.S.A.* 2C:35–19 requires defendants to detail their objections to the lab results in order to secure their right to confront the witnesses against them. Miller counters that the language of the statute is satisfied so long as the defendant timely objects to the admission of the lab certificate and asserts that the lab results will be contested at trial. We agree with Miller.

Our point of departure is this: when the state offers the lab certificate, it essentially is proffering inadmissible hearsay evidence to prove an element of the criminal case against a defendant. In order to use that evidence and not run afoul of the Confrontation Clause, the State must obtain defendant's consent, or failing that, must justify its admission at a hearing. *Matulewicz, supra.* *N.J.S.A.* 2C:35–19 does not and cannot affect the State's burden and certainly does not shift that burden to defendant. It merely serves to put the State on notice of those cases in which a defendant will not consent to the admission of the lab report and with respect to which the State must be prepared to produce an expert witness at trial or prove why one is not necessary. The obligation of defendant under the statute is to notify the State of his refusal to stipulate to the lab report and to assert that the lab results (composition, quality, or quantity of the tested substance) will be contested at trial.

The State's contrary interpretation of the act places its constitutionality in jeopardy by conditioning a defendant's exercise of his

right to confrontation on passing a legal hurdle. Because it is always the state and not defendant that bears the burden of justification, imposition of a barrier, beyond notice, to defendant's exercise of his right to confrontation cannot be countenanced.

It is a cardinal principle of interpretation that "[e]ven though a statute may be open to a construction which would render it unconstitutional or permits its unconstitutional application, it is the duty of this Court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation." *Garfield Trust Co. v. Dir., Div. of Taxation,* 102 *N.J.* 420, 433, 508 *A.*2d 1104 (1986)(quoting *State v. Profaci,* 56 *N.J.* 346, 350, 266 *A.*2d 579 (1970)); *see also Holster v. Bd. of Trustees of the Passaic County Coll.,* 59 *N.J.* 60, 66, 279 *A.*2d 798 (1971) ("It is an accepted principle of interpretation that, if possible, legislation will be read as to sustain its constitutionality."). Furthermore, that canon applies even if the statute's constitutionality is only drawn in question or put in serious doubt. *International Ass'n of Machinists v. Street,* 367 *U.S.* 740, 749, 81 *S.Ct.* 1784, 1790, 6 *L.Ed.*2d 1141, 1150 (1961) ("Federal statutes are to be so construed as to avoid serious doubt of their constitutionality."); *Crowell v. Benson,* 285 *U.S.* 22, 62, 52 *S.Ct.* 285, 296, 76 *L.Ed.* 598, 619 (1932) ("When the validity of an act of Congress is drawn in question, . . . it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

The desire to avoid a possible finding of unconstitutionality is likely why commentators have denominated defendant's objection, under *N.J.S.A.* 2C:35-19, as a vehicle for notice that should be "quite general." Leonard N. Arnold, 32 *New Jersey Practice, Criminal Practice And Procedure* § 21.43 (3d ed.2001). That view has been adopted by the Appellate Division in *State v. Kittrell, supra,* 279 *N.J.Super.* at 234, 652 *A.*2d 732:

Defendant filed a timely notice of objection on the ground that "the composition, quality and quantity of the substance submitted to the lab for analysis will be contested at trial." After this timely notice of objection, the admissibility of the

certificate was never determined prior to trial as required by *N.J.S.A.* 2C:35–19c. . . .

 In our view, the trial court erred in failing to require the State to establish an adequate foundation for the admission of the laboratory certificate. *See Id.* at 219, 581 *A.*2d 1347. Defendant was entitled to at least an evidential hearing addressing the factors set forth by the Court in *State v. Matulewicz, supra,* and adopted by us in the specific context of *N.J.S.A.* 2C:35–19 in *State in Interest of J.H., supra.*

*State in the Interest of J.H., supra,* is not to the contrary. Although that court observed that *N.J.S.A.* 2C:35–19c requires the defendant to "state specific grounds of objections under the criteria of admissibility set forth in *Matulewicz,*" it modulated that understanding by including, as an example of one such "specific" ground, a mere assertion that the lab certificate and "supporting information submitted by the State do not contain sufficient information to determine the certificate's admissibility under *Matulewicz.*" *State in the Interest of J.H., supra,* 244 *N.J.Super.* at 218, 581 *A.*2d 1347.

Although the procedure established in *N.J.S.A.* 2C:35–19 has been compared to the obligation of a defendant to provide a detailed notice of alibi prior to trial, *State in the Interest of J.H., supra,* 244 *N.J.Super.* at 217, 581 *A.*2d 1347, the analogy is a poor one. The alibi rule is one of necessity because a defendant is uniquely in possession of alibi evidence and there is no way for the State to prepare to counter that evidence without being apprised of its existence prior to trial. In the case of a lab certificate, the opposite is true. The State is fully aware of the lab procedures and the outcome of the testing and has complete access to the lab employees. It is the defendant who is essentially in the dark and unable to test the lab results and who, by the State's reading of the statute, would be required to vault a legal hurdle in order to exercise his right to confrontation. As the Supreme Court of Georgia noted in invalidating the requirement that a defendant proffer specific grounds for his objection to the admission of a lab report, such a requirement creates

 a "Catch–22" barrier between a defendant and his constitutional right to confront the witnesses against him by directing that a defendant set forth "specific grounds" that will be "contested in good faith at trial" in order to be entitled to a judicial determination on whether the defendant will be confronted with the lab analyst or

with the analyst's certificate. When a defendant attempts to surmount the barrier, he finds himself in the untenable position of having to identify "specific grounds" in order to confront the analyst, but being unable to confront the analyst in order to identify the "specific grounds." Requiring a defendant to request the presence of the witnesses against him and to explain why he requires their presence in order to be afforded his constitutional right of confrontation places too heavy a burden on the assertion of a constitutional protection.

[*Miller v. State*, 266 Ga. 850, 472 S.E.2d 74, 79–80 (1996).]

A similar result was reached in *State v. Christensen*, 135 N.H. 583, 607 A.2d 952 (1992), where the Supreme Court of New Hampshire struck down a notice and demand statute requiring a defendant to demonstrate "specific grounds" for his objection before he could obtain production of the laboratory employee who prepared it. The court observed that the statute requires a defendant "not only to request the presence of the technician but also to explain why he requires it." *Id.* at 954. The court summarized the conundrum a defendant faces under the statute: "[w]ithout confronting the analyst, the defendant cannot practicably identify 'specific grounds' under the statute, yet without identifying 'specific grounds,' he cannot confront the analyst." *Id.* at 953. That, according to the court, "does not raise mere procedural hurdles, it places nearly insurmountable barriers before the defendant" and "effectively cuts off the defendant's right to confront a material witness." *Ibid.* But see *State v. Crow*, 266 Kan. 690, 974 P.2d 100, 111 (1999) (upholding and interpreting statute as requiring defendant to state grounds of objection and to show grounds have an indicia of merit, are not interposed for delay, and will result in a valid issue being contested at trial).[2]

[2] Ten other states have chosen to avoid the constitutional problem to which we have adverted by specifically providing that defendants who wish to object to the admissibility of a laboratory report in lieu of live testimony have no burden other than to request the presence of the person who prepared the laboratory report within a given time frame. *See, e.g., Del.Code Ann.* tit. 10, §§ 4330, 4332(a) (2000); 725 *Ill. Comp. Stat. Ann.* 5/115–15(c) (West 2001); *Iowa Code Ann.* § 691.2 (West 2000); *Me.Rev.Stat. Ann.* tit., 17–A, § 1112.1 (West 1999); *Md. Code Ann.*, Cts. & Jud. Proc., § 10–1003(a) (2001); *Minn.Stat. Ann.* § 634.15(2)(a) (West 2000); *Ohio Rev.Code Ann.* § 2925.51C (West 2001); *S.C.R.Crim. P.* 6(a)(2000); *S.D. Codified Laws* § 23–3–19.3 (Michie 2000); *Va.*

We agree with the majority view expressed in legislation and case law that a defendant cannot, as a matter of constitutional imperative, be assigned any burden to detail an objection to the admission of an lab certificate. However, unlike some other jurisdictions, we see no reason to invalidate the entire notice and demand procedure. Rather, to avoid constitutional infirmity, we interpret *N.J.S.A.* 2C:35–19c to require only that a defendant object to the lab certificate and assert that the composition, quality, or quantity of the tested substance will be contested at trial. That interpretation insulates the statute from constitutional challenge and serves its fundamental purpose: to weed out prior to trial those cases in which there is a contest over the scientific proof and with respect to which the State will be required to produce a witness or prove why one is not necessary.

## VI

Based on the foregoing principles, we have concluded that Miller filed a timely and adequate notice under *N.J.S.A.* 2C:35–19. The trial court specifically expressed its belief in the credibility of Ms. Petrone who attested to the mailing and the non-return of the demand letter. That finding was buttressed by the court's own receipt of a copy of the very same notice. All that the Assistant Prosecutor was able to state was that the notice was not in his file and that he did not know whether it had ever been received. Even crediting that statement as true (which the trial court did), it

*Code Ann.* § 19.2–187.1 (Michie 2000). Those laws have withstood constitutional challenge primarily because the sole burden placed on a defendant to secure the presence of the laboratory employee for confrontation purposes is timely notice. *State v. Davison,* 245 *N.W.*2d 321, 323 (Iowa 1976), *cert. denied,* 430 *U.S.* 955, 97 *S.Ct.* 1600, 51 *L.Ed.*2d 805 (1977); *State v. Christianson,* 404 *A.*2d 999, 1002 (Me.1979); *Moon v. State,* 300 *Md.* 354, 478 *A.*2d 695, 703 (1984), *cert. denied,* 469 *U.S.* 1207, 105 *S.Ct.* 1170, 84 *L.Ed.*2d 321 (1985). *But see People v. McClanahan,* 191 *Ill.*2d 127, 246 *Ill.Dec.* 97, 729 *N.E.*2d 470, 478 (2000) (declaring Illinois notice and demand statute unconstitutional because statute does not require State to provide details as to reliability and "impermissibly requires a defendant to take a procedural step to secure his confrontation rights or be deemed to have waived them").

was inadequate to nullify what the defense had established. A defendant cannot be denied an opportunity to demand what is his right simply because the State does not have the notice of objection. We note that neither the Appellate Division nor the Attorney General have defended the trial court's decision denying defendant a hearing based on a notice defect.

Turning to the specificity of Miller's letter, we are satisfied that Miller fully conformed with the notice requirements of *N.J.S.A.* 2C:35-19c when he stated that the "composition, quality and quantity of the substance submitted to the laboratory may be inaccurate and may be contested at trial," and suggested that he needed more information about the equipment used in the analysis. Although there was some equivocation involved in the use of the term "may be contested at trial," we note that the slight amount of information provided in the form lab certificate is the reason for the statutory requirement that the notes and data underlying the report be provided to a defendant in order to allow "a fair opportunity to make an informed decision whether to contest" the admissibility of the certificate. Assembly Judiciary Committee, Commentary to the Comprehensive Drug Reform Act (November 23, 1987) (as reprinted in Cannel, *New Jersey Criminal Code Annotated,* comment on *N.J.S.A.* 2C:35-19 (2001-02)). The Prosecutor neglected to do so in this case. Given the paucity of detail in the form lab certificate, we view Miller's objection in this case as the most that could have been expected under the circumstances. Indeed, the "Catch 22" referred to by the Georgia Supreme Court in *Miller v. State, supra,* 472 *S.E.*2d at 79-80, could not have a plainer application than a case like this in which the data underlying the certificate was not even provided.

Once Miller filed a demand letter, two choices were available to the State: production of the lab employee or the hearing contemplated by the statute and *Matulewicz.* Because neither took place, Miller is entitled to a remedy. The Appellate Division's contrary conclusion—that in these circumstances the admission of the report was harmless error under R. 2:10-2—is

not supported by the record. It simply is impossible to know, at this juncture, whether Miller's challenge to the admission of the lab certificate could have affected the outcome of his case.

We remand the case to the trial court for a hearing at which the State will bear the burden of proving the reliability of the scientific methodology underlying the report, including the condition of the equipment used. *Matulewicz, supra,* 101 *N.J.* at 30–33, 499 *A.*2d 1363. Even if that methodology is established as reliable, Miller may advance additional arguments regarding the need for the production of the lab employee under the specific facts of the case.

If the trial court determines that the lab employee should have been produced, the Appellate Division judgment affirming Miller's conviction will be reversed and a new trial ordered. If the court rules, on the contrary, that the report was properly admitted in lieu of testimony, the judgment of the Appellate Division will be affirmed.

*For remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.