791 A.2d 1050 (2002)
348 N.J. Super. 213
STATE of New Jersey, Plaintiff-Appellant,
v.
Ceesay SIMBARA, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 4, 2002.
Decided February 27, 2002.
*1051 Peter A. Garcia, Acting Public Defender, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).
Boris Moczula, Passaic County Prosecutor, attorney for respondent (Jane E. Hendry, Special Deputy Attorney General, Senior Assistant Prosecutor, of counsel and on the brief).
Before Judges PETRELLA, STEINBERG and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
Defendant was charged in Passaic County indictment XX-XX-XXXXX with having committed the following offenses in Paterson on June 21, 1999: possession of a controlled dangerous substance, cocaine, third degree, N.J.S.A. 2C:35-10a(1)(Count One); possession of a controlled dangerous substance, cocaine, with intent to distribute, third degree, N.J.S.A. 2C:35-5a(1) and b(3) (Count Two); possession of a controlled dangerous substance, cocaine, with intent to distribute within 1,000 feet of school property, third degree, N.J.S.A. 2C:35-7 (Count Three); and possession of drug paraphernalia with intent to distribute, fourth degree, N.J.S.A. 2C:36-3 (Count Four).
Before trial, the State timely furnished to defendant a laboratory certificate as to the nature and composition of the alleged controlled dangerous substances, together with related details, thus invoking the procedure for proffering the certificate as evidence at trial as specified in N.J.S.A. 2C:35-19b, which reads as follows:
b. Upon the request of any law enforcement agency, the laboratory employee performing the analysis shall prepare a certificate. This employee shall sign the certificate under oath and shall include in the certificate an attestation as to the result of the analysis. The presentation of this certificate to a court by any party to a proceeding shall be evidence that all of the requirements and provisions of this section have been complied with. This certificate shall be sworn to before a notary public or other person empowered by law to take oaths and shall contain a statement establishing the following: the type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; and the nature and condition of the equipment used. When properly executed, the certificate shall, subject to subsection c. of this section and notwithstanding any other provision of law, be admissible evidence of the composition, quality, and quantity of the substance submitted to the laboratory for analysis, and the court shall take judicial notice of the signature of the person performing the analysis and of the fact that he is that person.
Defendant responded by giving the State timely objection under N.J.S.A. 2C:35-19c to the State's intended use of the lab certificate as evidence at trial. That statute provides:
c. Whenever a party intends to proffer in a criminal or quasi-criminal proceeding, a certificate executed pursuant to this section, notice of an intent to proffer *1052 that certificate and all reports relating to the analysis in question, including a copy of the certificate, shall be conveyed to the opposing party or parties at least 20 days before the proceeding begins. An opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection and the grounds for the objection within 10 days upon receiving the adversary's notice of intent to proffer the certificate. Whenever a notice of objection is filed, admissibility of the certificate shall be determined not later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and specific grounds for that objection that the composition, quality, or quantity of the substance submitted to the laboratory for analysis will be contested at trial. A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate. The time limitations set forth in this section shall not be relaxed except upon a showing of good cause.
Shortly before trial, a Law Division judge held a hearing pursuant to N.J.S.A. 2C:35-19c and determined that the lab certificate could not be admitted into evidence in lieu of the testimony of the technician who performed the testing referred to therein. In the judge's view, the certificate did not supply the details required by N.J.S.A. 2C:35-19b. The judge entered an order to that effect on September 18, 2001, and the State now appeals by leave granted. We reverse.
The procedures for possible use of laboratory certificates pursuant to these statutes as trial proof of controlled dangerous substances were recently discussed by our Supreme Court in State v. Miller, 170 N.J. 417, 790 A.2d 144 (2002). Justice Long stated in Miller, supra:
In 1987, the Legislature designed a procedure to streamline the trial of drug cases by weeding out, prior to trial, those cases in which scientific proof is not contested and in which a lab certificate may be admitted in lieu of expert testimony.
The Comprehensive Drug Reform Act prescribes that the certified results of a controlled dangerous substance analysis by a State Forensic Laboratory are admissible evidence of the "composition, quality, and quantity" of the substance tested provided that (1) the lab certificate meets certain criteria regarding the testing process to establish the certificate's reliability; and (2) a "notice and demand" procedure is satisfied. N.J.S.A. 2C:35-19.
The certificate must meet certain formal requirements, including the signature, under oath, of the laboratory employee who performed the analysis attesting to the results; a statement establishing "the type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; and the nature and condition of the equipment used." N.J.S.A. 2C:35-19b. A party intending to proffer the certificate must convey "notice of an intent" to do so to the opposing party at least twenty days before the trial. N.J.S.A. 2C:35-19c. That notice must include a copy of the lab certificate. Ibid.

A party who objects to the admission of the certificate in turn [must object as provided in N.J.S.A. 2C:35-19c].

*1053 [State v. Miller, supra, 170 N.J. at 428-29, 790 A.2d 144.]
Justice Long further explained in Miller:
The effect of the procedure established by N.J.S.A. 2C:35-19 is rather straight-forward: to cull out the cases that may require live testimony from, in our experience, the vast majority of cases in which the defendant does not oppose the admission of the lab certificate either because the focus of the defense is otherwise or because he or she may not wish to suffer the piling-on effect of a live witness when there is no true contest over the nature of the tested substance.

[State v. Miller, supra, 170 N.J. at 431, 790 A.2d 144.]
Here, defendant timely interposed an objection to the certificate under N.J.S.A. 2C:35-19c. What the State then must establish, consistent with Miller, is that the certificate supplies the information required by N.J.S.A. 2C:35-19b, supra. We conclude that the trial court erred in ruling that the lab certificate could not be admitted.
We note first that, consistent with the statute, N.J.S.A. 2C:35-19b, the document under review is a written certificate and there is no dispute that it was signed under oath by an appropriate laboratory employee as required by that section. It further appears that the certificate furnishes "a statement establishing the following: the type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; and the nature and condition of the equipment used." N.J.S.A. 2C:35-19b.
We see no reason why a certificate under this Statute ought to be interpreted in a stilted manner that deprives it of its context. It is apparent to us, for example, that the certificate in this case, which is entitled "New Jersey State Police Special Technical Services Section, Forensic Science Bureau, Certified Laboratory Report," can be fairly read to show the "results of drug analysis." Specimen 1, for example, is indicated to be "cocaine." With regard to that substance, the certificate notes that tests "3" and "4" were performed. On the certificate's "Test Procedure Key," the tests so performed are identified as "3. Color Tests" and "4. Gas Chromatography Mass Spectrometry" tests. To use another example, Specimen "2," is marijuana, as shown by "test procedures" stated to be "1. Microscopic examination" and "2. Duquenois-Levine Color Test."
The net weight is indicated in grams as to each item tested, and the person executing the report has certified as follows:
Pursuant to the provisions of N.J.S. 2C:35-19 (P.L.1987, c. 106), I hereby certify and attest that I am employed by a State Forensic Laboratory which has been designated by the Attorney General (copy of letter of designation on file with the Prosecutor's Office) for 12 years, I have a B.S. degree, and I have qualified as an expert witness on 42 occasions in Municipal and Superior Courts in New Jersey; that the above laboratory report, fairly and accurately documents the type and results of the analysis performed; that I am the person who performed analyses, reviewed results, and made the conclusions set forth in the above laboratory report; that my training and experience is fairly and accurately documented in a curricula vitae, which is on file with the Prosecutor's Office and incorporated by reference herein; that the equipment used to perform the type of analysis described above was functioning properly. The test procedures used are accurate, reliable, *1054 objective in nature, and performed on a routine basis within the laboratory.
In reviewing the certificate in this case, the trial court identified what it perceived to be deficiencies therein, including the following:
[T]he certificate ... says ... color tests, plural.... There is nothing to indicate what color tests were performed. It does not indicate in any way the result that was achieved by that color test....
Although the box "cocaine" is checked... there is nothing in the report that says that specimen number one was tested using some type of analysis and that the result of that indicates that it was cocaine.
The fact remains that there is nothing linking whatever test was actually performed on this specimen with what that finding was or what the basis of that finding was. It does not indicate the result that was achieved.
You can go down the line. The next test is number four, gas chromatography-mass spectrometry. It does not say what the result was of that test, and it does not indicate that it was a combination of the tests or what type of test was actually performed. It simply contains insufficient information....

* * *
Specimen number two has "microscopic examination." It does not, again, indicate what the result was ... of that examination. Number two indicates that there's something called the Duquenois Levine color test, and there is nothing to indicate the result that was achieved as a result of that analysis.
We think that the trial court erred as a matter of law in applying the statute too narrowly and rigidly to the certificate before it. Obviously, the question is of constitutional moment because, as discussed in Miller, under the Confrontation Clause, defendant has the right to have the State present the lab technician as a witness who can be cross-examined unless compliance with N.J.S.A. 2C:35-19 is established. The document is not filled with unintelligible scientific jargon, nor is it prepared so that it would be mere gobbledygook to one qualified to understand standard testing for controlled dangerous substances. We see no reason, if the certificate states what tests were performed, why further specifics as to testing need to be recited on the form. Presumably, any expert sufficiently qualified to testify on behalf of a defendant on these issues would be well aware of the meaning of the tests identified on the form and of the equipment needed to perform the tests.
It is beyond legitimate dispute that, consistent with the statutory requirements, the certificate here contains particular and reliable information for a qualified reader concerning "the type of analysis performed; the result achieved, any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; and the nature and condition of the equipment used." N.J.S.A. 2C:35-19b.
With regard to "the equipment used," it is clear to us in the present context that the certification that "the equipment used to perform the type of analysis described above was functioning properly" is sufficient to comply with the statute. Any qualified expert upon whom a defendant would call to analyze or refute the evidence in a lab certificate pursuant to this statute, or indeed the live testimony of the laboratory employee which the State might proffer in lieu of the certificate, presumably would be familiar with such tests as Gas Chromatography and Mass Spectrometry testing. We see no reason why a qualified expert would not be able to glean *1055 from the certificate sufficient information concerning the equipment used to perform such tests to satisfy the statute.[1]
The trial judge, sometimes described as the "gatekeeper" under the rules of evidence, has wide discretion in the admission or exclusion of evidence, subject of course to the requirements of those rules, of the law, and in a case such as this, of the Confrontation Clause. As we stated in Dinter v. Sears, Roebuck & Co., 252 N.J.Super. 84, 92, 599 A.2d 528 (App.Div.1991):
As a general rule, admission or exclusion of proffered evidence is within the discretion of the trial judge, whose ruling is not disturbed unless there is a clear abuse of discretion.... Even where there may have been error, reversal is required only when an unjust result occurred.
Yet even with the wide latitude that is accorded a trial court's discretionary judgment, such a decision will not withstand appellate scrutiny if it proceeds from a mistake of fact or an erroneous legal premise. We observed in State v. Steele, 92 N.J.Super. 498, 507, 224 A.2d 132 (App. Div.1966), that
[i]t is well settled that discretion means legal discretion, in the exercise of which the judge must take account of the law applicable to the particular circumstances of the case and be governed accordingly. If the trial judge misconceives the applicable law or misapplies it to the factual complex, in total effect the exercise of legal discretion lacks a foundation and becomes an arbitrary act. See also, State v. Brown, 118 N.J. 595, 604, 573 A.2d 886 (1990)
We are persuaded that the trial court's decision to exclude the lab certificate in this case was predicated on an erroneous legal conclusion: that N.J.S.A. 2C:35-19 requires a greater degree of specificity than it actually does. We reach this determination cognizant of what the Supreme Court has identified as the statute's "fundamental purpose: to weed out *1056 prior to trial those cases in which there is a contest over the scientific proof and with respect to which the State will be required to produce a witness or prove why one is not necessary." Miller, supra, 170 N.J. at 436, 790 A.2d 144. To effectuate that purpose, a review of the certificate's sufficiency should not be premised on an unfounded implicit assumption that the Legislature contemplated that it would be reviewed and evaluated, not by experts, but only by lay persons who are wholly non-conversant with chemistry and with tests of the type that are ordinarily used to identify controlled dangerous substances. A lab certificate's sufficiency under the statute must be considered in the practical context of whether it fairly and reliably informs a potential defense expert of the factors the statute specifies:
the type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; and the nature and condition of the equipment used.

[N.J.S.A. 2C:35-19b].
The Law Division judge failed to do so, and instead applied an erroneous legal standard that resulted in giving the statute too preclusive a reading. Because of this legal error, our determination is not an improper invasion of his discretion.
To summarize, defendant interposed an objection to the admission of a lab certificate in accordance with N.J.S.A. 2C:35-19c. At that point, the State was required either to present trial testimony of the lab employee who performed the alleged tests, or show at a hearing before trial that the proffered certificate was in conformity with the statute, to assure the certificate is reliable and thus admissible at trial. For the reasons stated, in our evaluation of the applicable statutory requirements, appropriately construed in the context in which lab certificates are to be furnished and scrutinized, we have determined that the certificate before us complies with N.J.S.A. 2C:35-19. We accordingly reverse the order appealed from and remand for trial.
Reversed and remanded.
NOTES
[1] To assume that a defendant's expert would be appropriately qualified is not at all inconsistent with the ruling in Miller on the issue regarding the extent, if any, to which a defendant could be required to provide details as to his or her objections to the admission of a lab certificate which the State proposed to use pursuant to N.J.S.A. 2C:35-19. On that issue, Justice Long stated:

We agree with the majority view expressed in legislation and case law that a defendant cannot, as a matter of constitutional imperative, be assigned any burden to detail an objection to the admission of an lab certificate. However, unlike some other jurisdictions, we see no reason to invalidate the entire notice and demand procedure. Rather, to avoid constitutional infirmity, we interpret N.J.S.A. 2C:35-19c to require only that a defendant object to the lab certificate and assert that the composition, quality or quantity of the tested substance will be contested at trial. That interpretation insulates the statute from constitutional challenge and serves its fundamental purpose: to weed out prior to trial those cases in which there is a contest over the scientific proof and with respect to which the State will be required to produce a witness or prove why one is not necessary.
[State v. Miller, supra, 170 N.J. at 436, 790 A.2d 144.]
Standards for admissibility of a lab certificate under the evidence rules were outlined in State v. Matulewicz, 101 N.J. 27, 499 A.2d 1363 (1985). Of course, unlike the court in Matulewicz, we are not here dealing with the admissibility of documents pursuant to the hearsay exceptions for business records or public reports, but with whether the lab certificate, apart from any possible admissibility as a hearsay exception, which was not sought to be established here, nevertheless can be admitted consistent with the Confrontation Clause because it comports with N.J.S.A. 2C:35-19 and thus evidences "`particularized guarantees of trustworthiness' [that] assure its reliability." Miller, supra, 170 N.J. at 426, 790 A.2d 144.