808 A.2d 123

STATE OF NEW JERSEY IN THE INTEREST
OF C.D. AND P.G., JUVENILES.

Superior Court of New Jersey
Appellate Division

Submitted September 9, 2002—Decided October 21, 2002.

458

Before Judges HAVEY, WELLS and PAYNE.

*Donald C. Campolo*, Acting Essex County Prosecutor, attorney for appellant State of New Jersey (*Joan E. Love*, Special Deputy Attorney General, on the brief).

*Peter A. Garcia*, Acting Public Defender, attorney for respondents C.D. and P.G. (*Michael O'Connor*, Assistant Deputy Public Defender, on the brief).

The opinion of the court was delivered by

WELLS, J.A.D.

In these juvenile delinquency cases against C.D. and P.G., the State appeals, upon leave granted, from an interlocutory ruling of the trial court which held that Newark Police Department Forensic Laboratory Certificates of Analysis were inadmissable at trial without the production of the laboratory technician who signed the certificates. The judge consolidated the cases for purposes of her consideration and ruling on the admissibility of the certificates, apparently, because the cases arose at the same time and involved the same issue. They are otherwise unrelated.

C.D. and P.G., both juveniles, were arrested within a week of each other and charged in separate juvenile complaints with possession of heroin and cocaine, in violation of *N.J.S.A.* 2C:35–10; possession of the same drugs with intent to distribute, in violation of *N.J.S.A.* 2C:35–5; and possession of the same drugs with intent to distribute within 1000 feet of a school, in violation of *N.J.S.A.* 2C:35–7. P.G., who was arrested with a co-defendant, was also charged with conspiracy, in violation of *N.J.S.A.* 2C:5–2. In both cases, the police seized bags or other containers and a number of smaller glassine envelopes containing suspected narcotics.

These bags, containers, glassine envelopes and their contents were transported to the Newark Police Department Forensic Laboratory for testing. In due course, the laboratory returned to the prosecutor's office in each case a pre-printed form of sworn

certificate which, in a check-off format, certified what specimens had been received for testing, the test or tests that had been performed, and the instruments used. The certificate states:

These instrument(s) were routinely serviced and were functioning properly on the date of analysis. My conclusions are based on my results of the above tests. The test procedures used are accurate, reliable, objective in nature, and performed on a routine basis within the laboratory.

Following that statement, the certificate lists the identifying lab number, the weight and kind of drug found by the test and its controlled dangerous schedule number, as set forth in *N.J.S.A.* 24:21–5 to –8, under four column headings labeled "Lab No.," "Net Weight," "Found" and "Sch." The certificate provides a line for the certifying technician to sign. Additionally, by either checking off or filling in blanks, the technician describes his academic degree, the subject in which that degree was awarded, the college that issued his degree, and the number of occasions he has performed such tests for submission to various courts or other entities and testified before them.

In both of the present cases, the certificates appear regular on their face in form, were completely filled in or checked off appropriately, and bore the technician's signature and the signature and stamp of a notary public.

On March 4, 2002 and March 6, 2002, by formal notice pursuant to *N.J.S.A.* 2C:35–19(c), the Essex County Prosecutor notified counsel for the juveniles of his intent to "proffer a Certificate of Chemical Analysis and accompanying reports relating to the analysis in question, in the above captioned matter." In each case the notice attached a copy of the certificate described above. No accompanying reports were attached. On March 18, 2002, by formal notice captioned "Notice of Objection to Admission into Evidence of Laboratory Certificate Pursuant to 2C:35–19(c)," defense counsel gave notice of his objection to the prosecutor's proffer. That objection stated:

1. The State has failed to present any evidence regarding the degree of complexity of the tests conducted by the chemist, the relative objectivity or subjectivity of the test results, i.e. the state has failed to include the reports relating to the

analysis in question. *State v. Matulewicz,* 101 *N.J.* 27, 499 *A.*2d 1363 (1985), *State v. Miller,* [170] *N.J.* [417][, 790 *A.*2d 144] (2002)(A–94–00).

2. The composition, quality or quantity of the substance submitted to the laboratory for analysis will be contested at trial.

3. The juvenile has a right under the "Confrontation Clause" to cross-examine the state chemist at trial. *U.S. Const.* Amend. VI; *N.J. Const.* art 1 S 10 (1947). *State In the Interest of J.H.,* 244 *N.J.Super.* 207, 581 *A.*2d 1347 (App.Div.1990).

We further note that the parties agree that prior to defense counsel's formal written objection, he indicated verbally on March 13, 2002, at a case status conference in the presence of the judge, that he intended to object to the State's proffer of the certificates.

Given this exchange of notices, the judge held two hearings, one in each case, to determine the admissibility of the certificates as she was required to do under *N.J.S.A.* 2C:35–19(c). The State argued that the defense counsel's notice was beyond the ten day period for objecting under the statute. In addition, the State argued that the certificates were regular on their face in form and content, and therefore, were admissible in evidence. The defense argued that the Certificates omitted the nature or condition of the laboratory equipment. *See N.J.S.A.* 2C:35–19(b). The defense also argued that the State had not established the reliability of the scientific methodology underlying the tests or the conditions of cleanliness in the laboratory and other like factors which might affect the test results.

The judge was clearly troubled by what she perceived as a conflict between two cases decided just before her ruling, *State v. Miller,* 170 *N.J.* 417, 790 *A.*2d 144 (2002) and *State v. Simbara,* 348 *N.J.Super.* 213, 791 *A.*2d 1050 (App.Div.2002), *leave to appeal granted,* 172 *N.J.* 174, 796 *A.*2d 891 (2002). Thus, she first held that *N.J.S.A.* 2C:35–19 is a rule of procedure and not one of evidence. She then stated:

What must also be made clear is that, after the defense objects, *N.J.S.A.* 2C:35–19 no longer applies. Instead, the laboratory certificates are subject to the Rules of Evidence, consistent with the Confrontation Clause of the Sixth Amendment. This is what saves the statute from constitutional infirmity, as discussed in *Miller.*

The judge then discussed the State's argument which relied on *Simbara.* She concluded:

This court respectfully disagrees with the *Simbara* court's reading of *Miller*. This court understands *Miller* to require that after the defense objects to the proffer of a laboratory certificate, the State must either present trial testimony or show at a hearing before trial that the proffered laboratory certificate demonstrates sufficient indicia of reliability and trustworthiness to justify its admission as evidence. A showing that the laboratory certificate conforms to the requirements of *N.J.S.A.* 2C:35–19, by itself, is insufficient to meet that standard.

We further note that the judge expressed concern that the State had not supplied any underlying reports with the certificates. In a footnote, the judge ruled that because the State was verbally advised of the defense's objection, it was not prejudiced by the late filing of the written defense objection and that the objection was sufficient to warrant a hearing under the statute. The judge's order denied the State's application to admit the certificates without the testimony of the lab chemist.

We agree in part and disagree in part and remand for a new hearing. We agree with the judge's conclusion that the defense's late written objection did not prejudice the State and that its objection properly invoked the hearing under *N.J.S.A.* 2C:35–19, even though the notice was two days late. Given the constitutional implications of the statute as described in *Miller, supra,* 170 *N.J.* at 425–26, 790 *A.2d* 144, the significant right of confrontation could not be sacrificed to such a brief delay in the formality of filing an objection, particularly where the State had actual notice that an objection to the certificates was forthcoming.

Secondly, we also agree with the judge that once the defense has objected, *N.J.S.A.* 2C:35–19 itself vanishes as a determinative to admissibility in evidence of the laboratory certificate. The statute does not fall into an exception to the hearsay rule. *Id.* at 430, 790 *A.2d* 144. On the contrary, the hearing offered by the statute simply gives the state a pre-trial opportunity to attempt to secure the admissibility of the certificate without the live testimony of the forensic chemist under the Rules of Evidence and the cases construing those rules. Otherwise, it may proceed to trial and produce the chemist as a witness.

We further share the judge's concern about the lack of reports accompanying the certificates. Clearly, if the laboratory provided the prosecutor's office with such reports in addition to the certificates, it also had a duty to serve them on the defense. However, in this case despite the reference to reports in the prosecutor's notice, we are satisfied that no such reports were actually produced or provided by the lab. Accordingly, the failure to serve reports in this case does not bear on the issue of their admissibility.

■ It is at the point of her dispositive ruling that the certificates were inadmissible that we part company with the trial judge. It was the purpose of the *Miller* Court to preserve the statute against its constitutional infirmities, but, at the same time, not to vitiate its salutary purpose

> to cull out the cases that may require live testimony from, in our experience, the vast majority of cases in which the defendant does not oppose the admission of the lab certificate either because the focus of the defense is otherwise or because he or she may not wish to suffer the piling-on effect of a live witness when there is no true contest over the nature of the tested substance.
>
> [*Id.* at 431, 790 A.2d 144.]

Thus, we do not read *Miller* as requiring the testimony of the forensic chemist who performed the tests in every case where the defense objects, provided the proffered certificate meets the criteria of admissibility under either *N.J.R.E.* 803(c)(6) or *N.J.R.E.* 803(c)(8). Indeed, the *Miller* Court stated:

> In *State v. Matulewicz, supra*, we detailed the way in which the proponent of a lab report could invoke the protection of two firmly-rooted hearsay exceptions, namely, the business entries exception (*N.J.R.E.* 803(c)(6)) and the public records exception (*N.J.R.E.* 803(c)(8)), thus avoiding Confrontation Clause concerns.
>
> [*Id.* at 426, 790 A.2d 144.]

By referring to *Matulewicz*, the *Miller* Court pointed to the leading case describing the necessary foundational proofs under which a laboratory certificate may be admitted. Such certificates are clearly not self-proving. To the extent that another panel of this Court may have suggested that they are, we respectfully disagree. *See Simbara, supra*, 348 *N.J.Super.* at 219–20, 791 A.2d 1050. Thus, a witness who is generally familiar with current

regulations applicable to the management of the laboratory; its practices and procedures; the nature, age, and condition of the testing instruments used; the form of certificate in question; and the other facts highlighted in *Matulewicz* should be called upon to testify at the hearing. This witness should testify as to those foundational facts which might reasonably lead to the conclusion that the methods and practices of the lab produce reliable and trustworthy test results on the specimens provided. If the court finds that those kinds of foundational facts regarding the trustworthiness of the certificate have been established, it may admit the certificate for the truth of its content without the testimony of the chemist who performed the tests and signed the certificate. *See N.J.R.E.* 803(c)(6); *N.J.R.E.* 803(c)(8). Certificates admitted upon such a ruling do not raise confrontation issues since they bear the imprimatur of reliability. The *Miller* Court stated:

> Most importantly, regardless of the particular hearsay exception involved, 'concern for reliability remains paramount' in such determinations. *Ibid.; see also* Paul C. Giannelli, *The Admissibility of Laboratory Reports in Criminal Trials: The Reliability of Scientific Proof,* 49 *Ohio St. L.J.* 671, 700 (1988) ('The routine admission of laboratory reports can be justified only if the presumption of reliability that generally attaches to business and, public records also applies to the reports.')
>
> [*Miller, supra,* 170 *N.J.* at 426–27, 790 *A.*2d 144.]

In this case no such witness was called and the judge, based on merely the format of the certificate, ruled against their admissibility. In her view, the check-off and fill-in-the-blank, pre-printed form Certificates were insufficient to justify admissibility. However, the ease with which these certificates are prepared is not a criteria for their admissibility. If the certificate was made in the regular course of business; it was the regular business of the lab to make such reports; and the sources of information or the method, purpose, or circumstances of preparation indicates that the certificate is trustworthy, it is admissible regardless of its format. *See N.J.R.E.* 803(c)(6). Analogous foundational facts should also be elicited from a knowledgeable witness if the certificates are proffered under *N.J.R.E.* 803(c)(8).

■ In this case, no record upon which to assess the judge's decision denying admissibility was developed by the parties. No foundational witness was called, nor were other facts introduced from which a reasoned judgment could be made under the Evidence Rules as to the trustworthiness of the proffered certificates. Accordingly, we are constrained to remand to the trial court for a new hearing.

■ We mention one further issue. We do not believe the notice and demand procedure of *N.J.S.A.* 2C:35–19(c) is a proper vehicle for raising issues about the general scientific reliability of the chemical tests themselves, the science underlying the tests, the technological accuracy of the instruments upon which the tests are performed, or other such fundamental concerns. Those kinds of contentions raise much more complex and sophisticated factual and legal issues under *N.J.R.E.* 702 that are simply not the purpose of the statute to cull out. *See generally Rubanick v. Witco Chemical Corp.,* 125 *N.J.* 421, 593 *A.*2d 733 (1991); *State v. Spann,* 130 *N.J.* 484, 508–11, 617 *A.*2d 247 (1993).

It is our understanding that, in general, the tests in these cases and the instruments used to perform them have long been standardized and are generally recognized in the scientific community as routine and reliable. They are tests which simply determine the composition, quality, and quantity of the alleged prohibited substances. *See Miller, supra,* 170 *N.J.* at 426, 790 *A.*2d 144. If it is, indeed, the basic science underlying the tests, the technological accuracy of instruments on which the tests are performed, or the interplay between the raw test results and any exercise in judgment of the chemist in determining the final test results that defense counsel wishes to raise, these are matters that must be raised by motion in accord with the Rules of Court, and, if required, considered at a *N.J.R.E.* Rule 104 hearing.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.