811 A.2d 448

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CEESAY SIMBARA, DEFENDANT–APPELLANT.

Argued October 21, 2002—Decided December 16, 2002.

38

*Ruth Bove Carlucci,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney; *Ms. Carlucci* and *Marcia H. Blum,* Assistant Deputy Public Defender, on the letter briefs).

*Jane E. Hendry,* Senior Assistant Prosecutor, argued the cause for respondent (*James F. Avigliano,* Passaic County Prosecutor, attorney).

*Steven A. Yomtov,* Deputy Attorney General, argued the cause *for amicus curiae,* Attorney General of New Jersey (*Peter C. Harvey,* Acting Attorney General, attorney).

The opinion of the Court was delivered by

VERNIERO, J.

We granted leave to appeal, 172 *N.J.* 174, 796 *A.*2d 891 (2002), to consider the admissibility of a laboratory certificate proffered by the State to demonstrate the nature and weight of an alleged controlled dangerous substance (CDS) possessed by defendant. The Appellate Division held that the form was admissible, suggesting that all such certificates are admissible so long as the State complies with *N.J.S.A.* 2C:35–19. Generally, that statute provides a procedural framework within which trial courts may admit certain certificates into evidence without live testimony of the laboratory employees or analysts who have prepared them. Because we conclude that the State is obligated to produce the certificate's preparer whenever a defendant timely invokes his or her right to confront that witness, we are compelled to reverse.

## I.

The relevant facts and procedural history may be summarized briefly. While on patrol in the city of Paterson on June 21, 1999, two detectives spotted a person whom they believed was wanted on outstanding warrants. (The suspect's name is immaterial to this appeal.) The detectives also observed defendant Ceesay Simbara who was standing next to the suspect and holding what appeared to the officers to be a clear plastic bag containing crack cocaine. They arrested both men and seized defendant's bag that contained the suspected drug. A Passaic County grand jury subsequently indicted defendant for third-degree possession of CDS, in violation of *N.J.S.A.* 2C:35–10a(1); third-degree possession of CDS with intent to distribute, in violation of *N.J.S.A.* 2C:35–5a(1); third-degree possession of CDS with intent to distribute within 1,000 feet of school property, in violation of *N.J.S.A.* 2C:35–7; and fourth-degree possession of drug paraphernalia, in violation of *N.J.S.A.* 2C:36–3.

The trial court conducted a pre-trial hearing to determine the admissibility of a State Police laboratory certificate proffered by the State to demonstrate the illicit nature and weight of the

substance found on defendant. The certificate is a pre-printed form on which an analyst has indicated, among other things, the type of drug revealed by the laboratory tests, the specimen's weight, and the names of the test procedures performed. Specifically, the form contains a hand-written "4" under the pre-printed heading, "Specimen No."; a hand-written "x" in a pre-printed box marked "cocaine"; the hand-written numbers "3, 4" under the pre-printed heading, "Test Procedures"; and a hand-written "9.51 G" under a pre-printed heading, "GROSS WEIGHT."

Additionally, under the pre-printed heading, "TEST PROCE-DURE KEY," the form indicates that "3" denotes "Color Tests" and "4" denotes "Gas Chromatography–Mass Spectrometry." The certificate contains no other information describing those tests. In respect of the specimen's gross weight, the form indicates that "G" means "Gram." Lastly, in a combination of pre-printed and typewritten language, the bottom of the form contains a certification that includes the name, training, and experience of the analyst who purportedly had performed the analysis, reviewed the results, and signed the form itself. The certification also includes a pre-printed statement that "the equipment used to perform the type of analysis described above was functioning properly," and that "[t]he test procedures used are accurate, reliable, objective in nature, and performed on a routine basis within the laboratory."

Neither side called witnesses at the pre-trial hearing, relying solely on arguments of counsel. Defendant argued that the State had failed to establish the type of laboratory analysis undertaken, failed to demonstrate that the equipment used to perform the analysis was functioning properly, and failed to demonstrate adequately the nature of the equipment used by the analyst. The State responded that the certificate indicated the type and weight of CDS found in defendant's possession, and adequately described the tests performed on the specimen. According to the State, the certificate complied with the requirements of *N.J.S.A.* 2C:35–19b and, therefore, was admissible.

The trial court agreed with defendant. The court concluded that the proffered form failed to demonstrate adequately the analyst's conclusions. The court observed that although the certificate indicates that the analyst used certain testing procedures, it does not explain the type of analysis performed and the result achieved from each test. The court explained as one example, "The [applicable] test is number four, gas chromatography-mass spectrometry. It does not say what the result was of that test, and it does not indicate that it was a combination of the tests or what type of test was actually performed. It simply contains insufficient information[.]" The court further stated that the certificate did not identify the nature and condition of the equipment used in each test as required under the statute.

The State moved for leave to appeal. The Appellate Division granted that motion and reversed the trial court's determination in a published decision. *State v. Simbara,* 348 *N.J.Super.* 213, 791 *A.*2d 1050 (2002). The panel noted that the document at issue is a written certificate signed under oath by a laboratory employee and conforms in all other respects with *N.J.S.A.* 2C:35–19. *Id.* at 218–19, 791 *A.*2d 1050. The panel explained that "the trial court erred as a matter of law in applying the statute too narrowly and rigidly to the certificate before it." *Id.* at 219, 791 *A.*2d 1050. Suggesting that the State never is obligated to produce its analyst when a certificate complies facially with the statute, the Appellate Division stated, "defendant has the right to have the State present the lab technician as a witness who can be cross-examined *unless* compliance with *N.J.S.A.* 2C:35–19 is established." *Ibid.* (emphasis added). As noted, we granted defendant's motion for leave to appeal, and also granted *amicus curiae* status to the Attorney General.

## II.

We must first determine whether the proffered certificate complies with the requirements of *N.J.S.A.* 2C:35–19. The statute provides, in relevant part:

[The] certificate shall be sworn to before a notary public or other person empowered by law to take oaths and shall contain a statement establishing the following: the type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; and the nature and condition of the equipment used.

[*N.J.S.A.* 2C:35–19b.]

In *State v. Miller*, we recently summarized the history and purpose of the statute, which need not be repeated at length here. 170 *N.J.* 417, 428–31, 790 *A.*2d 144 (2002). Suffice it to say that the statute provides a procedural framework within which a trial court may admit into evidence in a drug case an uncontested certificate containing the information set forth in the portion of the statute cited above. *Id.* at 428, 790 *A.*2d 144. The statute requires a prosecutor to give notice to a defendant of the State's intent to proffer a laboratory certificate at least twenty days in advance of trial. *N.J.S.A.* 2C:35–19c. Within that same timeframe, the prosecutor also must disclose to the accused "all reports relating to the analysis in question, including a copy of the certificate." *Ibid.*

Defendants who intend to object to the admission of a certificate must provide prosecutors with notice of that objection and the grounds for the objection within ten days of receiving the State's initial notice. *Ibid.* The statute also states:

Whenever a notice of objection is filed, admissibility of the certificate shall be determined not later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and specific grounds for that objection that the composition, quality, or quantity of the substance submitted to the laboratory for analysis *will be contested at trial*. A failure to comply with the time limitations regarding the notice of objection required by this section *shall constitute a waiver of any objections to the admission of the certificate.*

[*Ibid.* (emphasis added).]

Defendant asserts that initially the prosecutor did not convey any notes prepared by the analyst or the underlying data related to the test results contained in the certificate. If so, that omission would have been inconsistent with the requirement imposed on a prosecutor to provide an accused with a copy of not only the

certificate, but "all reports relating to the analysis in question[.]" *N.J.S.A.* 2C:35–19c. In his brief to this Court, the Attorney General acknowledges that the statute requires prosecutors to provide defendants with copies of the certificates and all related underlying materials.

Consistent with that acknowledgement, the Attorney General submitted as part of his brief his recent directive to prosecutors and laboratory directors. The Attorney General's directive states, in part:

> [W]hen and if the prosecutor decides in a particular case to file a formal notice of intent to use a laboratory certificate as trial evidence pursuant to *N.J.S.A.* 2C:35–19, the laboratory must compile and transmit to the prosecutor a copy of all reports or other documents prepared by or in the possession of the laboratory that pertain to the examination of the controlled dangerous substance in question. In these circumstances, the documents that must be transmitted to the prosecuting agency by the laboratory would include: a copy of the request for examination of evidence; all reports and notes prepared by the scientist; the underlying data used to reach conclusions concerning the composition and quantity of the substance submitted for examination, and any graphs, charts or computer printouts that describe the results of any manual or automated test of the substance submitted for examination.

> If the prosecutor intends to proffer a sworn laboratory certificate at trial pursuant to *N.J.S.A.* 2C:35–19, the prosecutor must, pursuant to the literal requirements of the statute, convey to defense counsel a copy of the certificate along with all of the foregoing documents. In addition, in order to ensure that laboratory certificates are admissible as evidence at trial, forensic laboratories must make available for inspection by defense counsel all manuals, standard operating procedures or written protocols developed or relied upon by the laboratory concerning the forensic tests at issue or concerning the use, operation and maintenance of the equipment used to perform the analyses.

> [Memorandum from Peter C. Harvey, First Assistant Attorney General, to County Prosecutors at 1–2 (Aug. 22, 2002).]

We are not called on to determine whether the Attorney General's directive has set forth an exhaustive list of documents required under *N.J.S.A.* 2C:35–19. That said, the directive appears to reflect a reasonable interpretation of the statute's requirements. We also assume that consistent with his supervisory authority, the Attorney General expects prosecutors to follow the directive uniformly in all counties. See *N.J.S.A.* 52:17B–104 (providing Attorney General with supervisory authority over county

prosecutors); *State v. Brimage*, 153 *N.J.* 1, 24–25, 706 *A.*2d 1096 (1998) (mandating that prosecutors uniformly comply with Attorney General's directive regarding negotiated pleas in drug cases).

Turning to the actual certificate, it generally tracks the statutory requirements. It describes, albeit in shorthand fashion, the type of analyses or tests performed on the specimen found on defendant, *e.g.*, "Color Tests" and "Gas Chromatography–Mass Spectrometry." It further discloses the combined result achieved from those tests, *e.g.*, that the tests revealed that the specimen was "cocaine" weighing "9.51 [grams]."

As for the analyst's training and experience, the form discloses that Alice P. Nahas has been employed by the State forensic laboratory for twelve years, has earned a Bachelor of Science degree, and has qualified as an expert witness on forty-two occasions in municipal court and before the Superior Court in New Jersey. It also contains a statement that the analyst's "training and experience is fairly and accurately documented in a curricul[um] vitae which is on file with the Prosecutor's Office and incorporated by reference herein[.]"

Additionally, the form bears the signature of the analyst and contains a certification that she is "the person who performed analyses, reviewed results and made the conclusions set forth in the above laboratory report[.]" Lastly, the certificate appears to have been executed properly under oath before a notary public of New Jersey.

As noted, however, the form does not state explicitly "the nature and condition of the equipment used." *N.J.S.A.* 2C:35–19b. Defendant argues that the certificate must be excluded on the basis of that omission. Moreover, defendant echoes the trial court in arguing that the bare references to "Color Tests" and "Gas Chromatography–Mass Spectrometry" are impermissibly "vague and skeletal" and, therefore, inconsistent with the statute. We disagree.

We assume that by now the prosecutor has furnished or made available to defendant all supporting data and other forms of information, including the analyst's individual notes, graphs, standard procedures, instrumental parameters, and the criteria for analysis, as set forth in the Attorney General's directive. (Indeed, much of the relevant material appears to be attached to the Attorney General's brief, which the State presumably served on defendant.) Under those circumstances, the form proffered by the State sufficiently conforms to the statute when considered in concert with that other information.

■ The Attorney General submits that if the certificate is modified to include all the information sought by defendant or suggested by the trial court, then the form itself would "become unintelligible to the lay juror, thereby defeating the purpose of *N.J.S.A.* 2C:35–19." We agree. The statute's purpose, as suggested earlier, is to establish an efficient process by which the State may place before the trier of fact in a drug case an uncontested certificate following sufficient notice to an accused. We must interpret the statute sensibly and with that purpose in mind. In so doing, we hold that the certificate here satisfied the essential elements of *N.J.S.A.* 2C:35–19 when considered in concert with its underlying data and the other information that the prosecutor is required to furnish to the accused in all cases.

### III.

The next issue is whether the prosecutor's compliance with *N.J.S.A.* 2C:35–19 alone renders the proffered certificate admissible. We hold that it does not.

In *Miller, supra,* the Court addressed whether defendant Timothy Miller's right to confront his accusers under the Sixth Amendment to the United States Constitution and under Article I, paragraph 10 of the New Jersey Constitution had been violated when the trial court admitted a laboratory certificate over Miller's objection. 170 *N.J.* at 422, 790 *A.*2d 144. The narrow issue before us was whether the form letter sent by Miller's attorney to

the prosecutor complied with the statute for purposes of constituting a demand for a hearing. We held that the attorney's letter was acceptable under the statute because it had placed the prosecutor sufficiently on notice that Miller would contest or object to the certificate at trial. *Id.* at 437, 790 *A.*2d 144.

*Miller* did not determine a prosecutor's obligation once a defendant makes a timely objection within the procedural framework of the statute. We attempted to make clear, however, that a laboratory certificate is not admissible merely because it complies with *N.J.S.A.* 2C:35–19. We explained: "[T]he admissibility of a laboratory certificate under *N.J.S.A.* 2C:35–19 does not turn on a showing of its reliability, but rather on whether the conclusions contained therein will be contested at trial." *Id.* at 430, 790 *A.*2d 144 (internal quotation marks and citation omitted).

We also cited a case frequently quoted in this setting, *State v. Matulewicz,* 101 *N.J.* 27, 499 *A.*2d 1363 (1985). Decided prior to the enactment of *N.J.S.A.* 2C:35–19, *Matulewicz* focused solely on whether a trial court may admit a chemist's laboratory report under either the business-entries exception to the hearsay rule (now codified under *N.J.R.E.* 803(c)(6)) or under the exception pertaining to reports of public officials (now codified under *N.J.R.E.* 803(c)(8)). Because the facts before the Court in that case were insufficient to determine the reliability of the certificate, a necessary element under either exception, the Court remanded the matter for development of an adequate record. *Id.* at 32–33, 499 *A.*2d 1363.

In citing *Matulewicz* in *Miller, supra,* we stated that, "[i]n order to use [the certificate] and not run afoul of the Confrontation Clause, the State must obtain defendant's consent, or failing that, must justify its admission at a hearing." *Id.* at 172 *N.J.* 432, 790 *A.*2d 144. We elsewhere stated that once the defendant in *Miller* "filed a demand letter, two choices were available to the State: production of the lab employee or the hearing contemplated by the statute and *Matulewicz.*" *Id.* at 437, 499 *A.*2d 1363. The State relies on those statements to support its position that it

may produce the analyst or seek to admit the certificate without producing that witness, notwithstanding defendant's contrary objection.

We did not intend *Miller* to be viewed in that fashion. We cited *Matulewicz* to underscore the State's obligation to establish the reliability of the laboratory certificate in accordance with the two hearsay exceptions at issue in that case. Consistent with the Confrontation Clause, we did not intend to suggest that the State could deny a defendant the right to confront a laboratory employee or analyst when that defendant challenges one or more aspects of the certificate. As we noted, "even if the lab procedures are sufficiently reliable, in general, under the above mentioned hearsay exceptions, a defendant may nevertheless, after reviewing the lab certificate and accompanying reports, present reasons why the lab technician must be produced in his or her case." *Miller, supra,* 170 *N.J.* at 428 n. 1, 790 *A.2d* 144.

■ Stated differently, *N.J.S.A.* 2C:35-19 codifies the procedures under which a defendant may assert or waive any objections to the admission of a laboratory certificate in a given case. It is basically a two-step process. First, the State informs a defendant of its intended use of a certificate, which must conform to the statute in form and content when considered in concert with its underlying data and other information that the prosecutor is required to supply to the accused. Second, within the enumerated timeframe, the accused either objects to the certificate or is considered to have waived that objection for all purposes. *State in the Interest of J.H.,* 244 *N.J.Super.* 207, 218, 581 *A.2d* 1347 (App.Div.1990) (concluding that "[i]f the defendant does not file a timely objection to the certificate, any possible objection is waived and the certificate may be admitted").

■ The State's proffer of a certificate whose form and content conform to the statute does not itself preclude a defendant's right to confront the certificate's preparer at trial. The statute merely establishes the mechanism by which a trial court ultimately will determine whether a genuine contest exists between the parties in

respect of the proffered certificate that would require production of the analyst. The Appellate Division concluded similarly in *State in the Interest of C.D. and P.G.*, 354 *N.J.Super.* 457, 808 *A.*2d 123 (2002). The court explained that "once the defense has objected, *N.J.S.A.* 2C:35–19 itself vanishes as a determinative to admissibility in evidence of the laboratory certificate." *Id.* at 463, 808 *A.*2d 123.

A laboratory certificate in a drug case is not of the same ilk as other business records, such as an ordinary account ledger or office memorandum in a corporate-fraud case. Those latter documents have not been prepared specifically for the government's use in a potential criminal prosecution. In contrast, the analyst prepares the laboratory certificate at a prosecuting agency's request for the sole purpose of investigating an accused. Because the certificate is singularly important in determining whether the accused will be imprisoned or set free, we must be sensitive to Sixth Amendment interests whenever a defendant preserves those interests for trial. Yet, we adhere to our belief that in the majority of cases a defendant will not challenge the certificate "either because the focus of the defense is otherwise or because he or she may not wish to suffer the piling-on effect of a live witness when there is no true contest over the nature of the tested substance." *Miller, supra,* 170 *N.J.* at 431, 790 *A.*2d 144.

■ Consistent with our holding, the trial court shall afford defendant the opportunity to renew his challenge to the certificate in view of the supplemental information furnished under the Attorney General's directive. Informed by that additional material, defendant may opt not to contest the certificate, in which case it shall be admitted at trial. If, however, defendant maintains his right to confront the analyst, then he shall be entitled to do so by cross-examining her before the trier of fact.

## IV.

In addition to challenging the laboratory results in an individual case, a defendant might raise "issues about the general scientific

reliability of the chemical tests themselves, the science underlying the tests, the technological accuracy of the instruments upon which the tests are performed, or other such fundamental concerns." *C.D., supra,* 354 *N.J.Super.* at 466, 808 *A.2d* 123. In that regard, "[i]t is our understanding that, in general, the tests in these cases and the instruments used to perform them have long been standardized and are generally recognized in the scientific community as routine and reliable." *Ibid.* Consequently, we would expect that if defendant intends such a broad challenge here, then the trial court would take judicial notice, consistent with *N.J.R.E.* 201, of any relevant published articles or studies, or would rely on prior case law that might dispose of that challenge.

## V.

The judgment of the Appellate Division is reversed to the extent that it upholds the admissibility of the proffered certificate without production of the analyst. The matter is remanded to the trial court for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.