74 N.J. Super. 510 (1962)
181 A.2d 555
STATE OF NEW JERSEY, PLAINTIFF,
v.
SAMUEL D. NASH, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided May 17, 1962.
*511 Mr. Maurice McKeown, Assistant Prosecutor, for plaintiff (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
Mr. Alex Yablonsky, attorney for defendant.
MATTHEWS, J.C.C.
On June 23, 1961, at approximately 3:00 P.M., two police officers of the Newark Police assigned to the narcotics squad were riding in a police car on 16th Avenue in the vicinity of its intersection with Littleton Avenue in the city. As the officers' vehicle approached No. 71-16th Avenue, which is a three story, multiple-family tenement dwelling, they observed one Lawrence Rainey standing in the entrance way of No. 71. Rainey, whom the officers knew as Hoppergrass, was well known to them as a narcotics user. Upon observing Rainey the officers stopped their motor vehicle and went over to question him concerning his activities in the area. As they came up to Rainey who was still standing in the doorway of No. 71, the officers noticed two other individuals standing in the common hallway of the tenement house. One of the officers passed Rainey and entered into the common hallway; upon entry the officer immediately observed a packet resting on a table in the hallway, and the defendant Nash moving away from the table which contained the packet. The officer *512 recognized the packet on the table as the type usually employed for packaging narcotic drugs and, further, recognized defendant as a previous violator of the narcotics laws. Upon making these observations the officer seized the packet and directed defendant and his companion, later identified as James Holmes, to stand up against the wall. He thereupon summoned his companion into the hallway. Nash, Rainey and Holmes were arrested for possession of narcotic drugs. Following the arrest the officers conducted a cursory search of the immediate area of the hallway, during which another packet similar to the first seized was found. The second packet was discovered lodged under the table. Each packet upon examination was found to contain nine decks of heroin. Subsequently, the present indictment was returned by the Essex County grand jury charging defendant Nash with illegal possession of a narcotic drug, contrary to the provisions of R.S. 24:18-4.
Defendant Nash now moves to suppress the evidence consisting of the glassine envelopes containing heroin which were contained in the packets seized and found by the officers in the hallway, on the grounds that the search here involved was without a warrant, and that the officers did not have reasonable grounds to make the seizure and arrest defendant.
The principal argument advanced on behalf of defendant may be summarized in the following manner: Defendant claims to have been on the premises 71-16th Avenue as the invitee or guest of a young woman named Parker, who lived on the third floor of the tenement. He claims that on the day in question, at approximately 2:30 to 3:00 P.M., he went to No. 71 and ascended the stairs to the Parker apartment, only to find no one at home. He thereupon descended the stairs and as he reached the first floor landing the officers came into the building with "another fellow" and immediately told defendant to stand up against the wall. Defendant says he was searched by the officers and that nothing was found on him. He was told to leave and, *513 as he went out the front door, was called back and arrested, since one of the officers had found something in the hallway.
Under these facts defendant claims that he was properly in the building in question; that the entry of the officers into the hallway was illegal, and that, accordingly, all of the activities of the officers, including the subsequent discovery of the narcotics, constituted an illegal search and seizure contrary to the provisions of the Fourth Amendment of the Constitution of the United States. In support of this argument defendant relies on State v. Masi, 72 N.J. Super. 55 (Law Div. 1962); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948) and Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). It is claimed that under these decisions the presence of the officers on the premises in question was illegal since the officers had no reasonable grounds for suspicion, supported by facts known to them, which would warrant a cautious man in believing that a crime was then being committed on the premises. It is further claimed that even assuming that the officers knew Rainey as a previous narcotics violator and also knew defendant in the same capacity, this knowledge in itself, under the circumstances here presented, did not give rise to an emergency situation under which the officers can be said to have been compelled to act as they did in entering the premises and conducting the search. Defendant concludes that the only purpose the officers could have had in entering the building was to conduct a search; everything, therefore, which occurred thereafter must necessarily be deemed illegal.
The decisions in Masi and McDonald, supra, may readily be distinguished from the matter presently before this court. In Masi the officers there involved broke into the premises occupied by defendant without a warrant and thereafter proceeded to search defendant and his home. The building involved in Masi was also an apartment house type dwelling. The front door or entrance to the common hallway of the *514 building was kept locked, and admission to the hallways of the building could be gained by outsiders only by key or through the voluntary act of one inside. In McDonald, the building there involved was also an apartment-type dwelling. Entry by the officers in the McDonald case was gained through the window of the landlady's apartment and thence to the common hallway of the building, and from there to the defendant's apartment. In both Masi and McDonald the subsequent search after entry was conducted in the living quarters of each of the defendants.
The building here involved, while an apartment-type dwelling, had an unlatched front door by which entry could be freely gained by anyone into the common hallways of the building. This door was used by the officers here to gain entry. In addition, the activities of the officers in making and effecting the seizure complained of, and in making the subsequent arrests, were confined to the common hallway; at no time did the officers enter the living quarters of any tenant of the building.
Defendant contends, however, that since he was an invitee in the building, he has a personal and constitutionally protected interest in the security and integrity of the building, and that as a guest he may expect protection from criminal intrusion therein. This argument is developed, of course, from Mr. Justice Jackson's concurring opinion in McDonald v. United States. It seems to me, however, that in resorting to this argument defendant completely overlooks the full reasoning of both the majority and concurring opinions in that case.
In McDonald the police officers involved had reason to believe that an illegal lottery operation was being conducted in a room rented by defendant on the premises in question. The premises had been under surveillance by the officers over a period of time. The officers had, at least on one previous occasion, attempted to procure a warrant to search the premises, but the application had been denied by the United States Commissioner for unreported reasons. The *515 surveillance continued, and thereafter, without benefit of a warrant either for arrest or search, the officers entered the premises by raising a window leading into the landlady's dwelling quarters without her consent. From these dwelling quarters the officers proceeded to the common hallway of the building to the door of defendant's apartment. Using a chair, one of the officers peeked into the apartment through the transom and observed the defendant and another engaged in obvious lottery activity. Defendant was ordered to open his door; he did so, and thereafter the search complained of was made and defendant and his guest were arrested.
In reversing the determinations of the District and Circuit Courts that the arrest and search of defendant and his apartment were valid, the Supreme Court of the United States pointed out that under the circumstances the officers were not responding to an emergency. In the absence of an emergent situation there must exist compelling reasons to justify the absence of a search warrant. The opinion points out that a search without a warrant demands exceptional circumstances. The court would not assume that under the circumstances where defendant had been under surveillance for a long period of time and no warrant had theretofore been obtained, the officers on the day in question were presented with a situation that required emergency action. As is pointed out in the opinion, the operation being conducted by defendant was not the type which gave indication that it would be abandoned; nor was the property being used to carry out the venture in the process of destruction, nor likely to be destroyed, in view of defendant's continued course of activity over a period of time known to the officers.
As to the guest who was in the room with defendant, the majority found that he, too, was prejudiced by the lower courts' denial of defendants motion since the unlawfully seized materials were the basis of evidence used against him at trial. If the property had been returned to McDonald, it would not have been available for use at the trial. No *516 mention is made, however, as to the right of the guest himself to move for suppression of the evidence; his rights were clearly dependent upon the rights of his codefendant McDonald.
In his concurring opinion Justice Jackson felt compelled to indicate for the benefit of law enforcement officers what appeared to some of the justices to be the reason the search in question was bad. 335 U.S., at p. 457, 69 S.Ct. 191, 93 L.Ed. 153. The principal theme of Justice Jackson's opinion is that the conduct of the officers in gaining entrance to the building was criminal in nature since the officers forced their way into the premises without either a search warrant or an arrest warrant; the felonious character of their entry, it seemed to Justice Jackson, followed every step of their journey inside the house and tainted its fruits with illegality.
After describing the conduct of the officers in gaining entry, Justice Jackson went on in his opinion as follows:
"Doubtless a tenant's quarters in a rooming or apartment house are legally as well as practically exposed to lawful approach by a good many persons without his consent or control. Had the police been admitted as guests of another tenant or had the approaches been thrown open by an obliging landlady or doorman, they would have been legally in the hallways. Like any other stranger, they could then spy or eavesdrop on others without being trespassers. If they peeped through the keyhole or climbed on a chair or on one another's shoulders to look through the transom, I should see no grounds on which the defendant could complain. If in this manner they, or any private citizen, saw a crime in the course of commission, an arrest would be permissible.
But it seems to me that each tenant of a building, while he has no right to exclude from the common hallways those who enter lawfully, does have a personal and constitutionally protected interest in the integrity and security of the entire building against unlawful breaking and entry. Here the police gained access to their peeking post by means that were not merely unauthorized but by means that were forbidden by law and denounced as criminal." (335 U.S., at p. 458, 69 S.C., at 194; emphasis added)
In Jones v. United States, supra, there was an application on behalf of defendant who had been convicted for *517 the violation of the Federal Narcotics Laws to suppress evidence consisting of certain narcotics which allegedly had been seized by federal officers in an illegal manner. Defendant was arrested in the apartment of a friend by federal narcotics officers who were executing a warrant to search for narcotics. One of the principal questions raised before the Supreme Court of the United States was the standing of defendant to challenge the legality of the search in the circumstances of the case, which indicated that defendant was nothing more than a guest or invitee in the apartment in question. The opinion does not concern itself, nor was there raised before the court as far as can be determined, any question as to the method by which the officers gained access to the premises.
In dealing with the point concerning the status of defendant the Supreme Court determined that it is unnecessary and ill-advised to bring into that area of the law dealing with the constitutional right to be free from unreasonable searches and seizures "subtle distinctions, developed and refined by the common law in evolving the body of private property law * * *." The holding in Jones, as to the status of the defendant, is that anyone legitimately on the premises where a search occurs may challenge its legality by way of motion to suppress, when its fruits are proposed to be used against him. 362 U.S., at p. 267, 80 S.Ct. 725, 4 L.Ed.2d 697. This holding of the court, however, is not to be considered to avail those who are wrongfully on the premises searched.
I deem it unnecessary to decide whether the defendant here was legally on the premises in question, although the only testimony relevant to this question in the instant proceeding was that of the defendant himself, who claims to have been visiting a lady friend. Assuming that defendant has the status to claim the right of privacy guaranteed under the Fourth Amendment of the Federal Constitution, I am, nevertheless, of the opinion that defendant's motion to suppress must be denied.
*518 There is nothing in the proceeding before me to indicate that the entry of the officers here into the hallway of No. 71-16th Avenue was unlawful. As has been heretofore indicated, the tenement building had a common hallway to which access might be gained through an unlocked door. Nothing barred the officers from entry, such as barred the officers in the McDonald and Masi cases. Under these circumstances it cannot be said that the entry gained by the officers to the hallway should be characterized as felonious. Once the officers were inside the hallway, the experienced eye of the first officer who entered observed a package familiar to him as one commonly employed to carry narcotic drugs. Upon observing what he believed to be contraband, and the activity of the defendant in attempting to move away from its location, the officer concluded that a crime was then being committed in his presence. The situation presented at that moment was, to say the least, of an emergent nature. It would be foolhardy to require that under such circumstances the officers should then leave the scene and apply to a magistrate for a search warrant. It is clear to me that at the moment of making the observations heretofore mentioned, the officer had reasonable grounds to believe, as a prudent and a discreet person, that a violation of the law was then and there being committed in his presence. In that posture of affairs, his duty was clear. He effected the arrests and conducted a reasonable search of person of defendant and the immediate area to determine if any additional contraband was present. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); State v. Mac Queen, 69 N.J.L. 522 (Sup. Ct. 1903).
I find no evidence that the entry of the officers here was for the purpose of making a search of the premises without a warrant, and thus to constitute the actions of the officers to be a general search such as has been condemned by the Supreme Court of the United States in many decisions. See Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, *519 70 L.Ed. 145 (1925); Taylor v. United States, 286 U.S. 1 (1932); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). The activity of the officers, to the contrary, consisted of a lawful entry into the building to ascertain the reason for the presence of the defendant and his companion in the common hallway. When the officer observed the contraband upon entry, that which followed constituted a seizure without search. Such activity is not, in my judgment, prohibited by the Federal Constitution. It has been argued that seizure as a result of a trespass becomes a search, but as I have indicated, there is nothing here which would lead me to the conclusion that the officers under these circumstances should be regarded as trespassers. If such be the case, the result of such a holding might well act to exclude the police from the common hallways of all buildings, and thus deprive landowners and their tenants of desired police protection.
If the courts are to regard a public hallway, to which access is unbarred to the general public, as out of bounds for police investigation, I am afraid that we would be creating a sanctuary for the criminal, to the detriment of the rights of the public at large. I fail to see how any individual right will be better protected by such a result.
Defendant's motion to suppress the evidence is denied.