**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4710-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DEWAYNE R. ANDERSON,
a/k/a WAYNE R. ANDERSON,

     Defendant-Appellant.

_____

Submitted March 7, 2019 – Decided April 24, 2019

Before Judges Simonelli and Firko.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 11-06-0570.

Joseph E. Krakora, Public Defender, attorney for appellant (Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Daniel Opatut, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After the trial court denied his motion to suppress evidence seized during a warrantless search of his residence, defendant Dewayne R. Anderson was found guilty of all counts listed against him in the indictment. Defendant was charged with: possession of a controlled dangerous substance ("CDS"), third-degree, N.J.S.A. 2C:35-10(a)(1) (Count I); possession of CDS with intent to distribute, third-degree, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (Count II); possession of CDS with intent to distribute in a school zone, third-degree, N.J.S.A. 2C:35-7, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (Count III); possession of CDS with intent to distribute, third-degree, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (Count IV); possession of CDS with intent to distribute in a school zone, third-degree, N.J.S.A. 2C:35-7, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (Count V); possession of a firearm while committing a CDS offense, second-degree, N.J.S.A. 2C:39-4.1(a) (Count VI); receiving stolen property, third-degree, N.J.S.A. 2C:20-7(a) (Count VII); maintaining a narcotics nuisance, fourth-degree, N.J.S.A. 24:21-21(a)(6) (Count XI); and certain persons not to have weapons, second-degree, N.J.S.A. 2C:39-7(b) (Count XII). He was given an extended term sentence of eighteen years subject to nine years of parole ineligibility, and appropriate fines and penalties. This appeal followed.

2

On appeal, defendant raises the following contentions:

POINT I

THE WARRANTLESS SEARCH RESULTING IN THE DISCOVERY OF THE CONTRABAND DOES NOT FALL WITHIN ANY RECOGNIZED EXCEPTION TO THE WARRANT REQUIREMENT, NECESSITATING REVERSAL. [U.S. CONST., AMENDS. IV, XIV; N.J. CONST., ART.1, [¶] 7].

A. The officer was not lawfully in the hallway.

B. The State did not carry its burden of demonstrating that the contraband was in plain view.

POINT II

THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE IN ALLOWING LAY TESTIMONY CONCERNING THE LABORATORY CERTIFICATE. (Not raised below).

POINT III

THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE, NECESSITATING REDUCTION.

Based upon our review of the record and applicable law, we conclude that the search of defendant's residence was constitutional, the laboratory certificate was properly admitted into evidence, and the trial court imposed an appropriate sentence. We affirm.

I.

The State developed the following proofs at the April 12, 2013 suppression hearing. Trenton detectives Charles Steever and Jason Astbury were conducting surveillance on January 30, 2011, at 1:00 a.m. and observed defendant and his sister, co-defendant Tina Anderson, sitting on the front porch of their row house, comprised of two apartments with a common hallway.[1] After observing numerous individuals conversing with defendant and Anderson and entering and exiting the home, which was situated in a reputed high drug trafficking area, the detectives surmised that narcotics were being sold even though no exchange of drugs or money was observed. The detectives drove up to the front of the building, Anderson saw them, and she immediately turned around and threw an object into the building that landed on the floor outside of the common hallway. The front door was "completely open." After detaining Anderson, Detective Steever entered the common hallway of the building, and observed a set of keys on the floor and defendant running away from the basement door at the end of the hallway and attempting to enter the first floor apartment, which was adjacent to the basement doorway. Steever peered through the open basement door from the top of the stairwell and, using his

---

[1] Regrettably, Anderson passed away prior to trial.

A-4710-16T3

flashlight, saw a 9mm silver handgun; a quantity of suspected CDS crack cocaine in Ziploc bags; two socks containing marijuana; two digital scales; $309 in cash; packaging material; and drug paraphernalia. The handgun was unloaded by Steever for safety reasons and defendant and Anderson were placed under arrest.

Detective Steever was the State's only fact witness at the suppression hearing and at trial. He testified that defendant's residence was known to him from previous investigations and described it as a "row house" divided into two apartments, sharing a common hallway, with a stairwell leading up to the second floor apartment. On the day in question, January 30, 2011, Steever observed defendant coming "through the open basement door into the common hallway." In addition to "operational street lights outside" lighting up the common hallway, the detective illuminated the basement area using his flashlight and saw the narcotics, the "Taurus handgun" loaded with "fourteen live rounds," and other items. On direct examination, Detective Steever verified that the door at the front of the building was "unlocked" and on the "three or four" occasions he had been there previously, "normally that door was left open." The apartment doors were locked on the date in question.

A-4710-16T3

On May 16, 2013, the motion judge granted defendant's suppression motion finding that although the detectives were lawfully on the premises and "had an objectively reasonable and articulable suspicion to conduct a Terry[2] stop," they were not properly in the viewing area, thereby making the protective sweep unreasonable.

The motion judge held initially that:

> In this case, there was no testimony to confirm or deny either of the defendants['] relationship to 180 Walnut Avenue other than the facts presented. The [c]ourt finds that the [co-]defendant, Tina Anderson, was in constructive possession of a set of keys that were discovered to access the front door and first floor apartment. Therefore, the [c]ourt can reasonably infer that [she] was a tenant of the property and [defendant] had a similar interest to [her] or was an invitee on January 30[], 2011, based upon his attempted access to the first floor apartment.
>
> [Detective] Steever testified that the front door to the multifamily dwelling was open at the time he entered. He further testified that he entered 180 Walnut Avenue during previous investigations and at all times the door remained unlocked. Consistent with the court's holding in Nash,[3] anyone could gain access to the front door and the common hallway of this multifamily dwelling. Accordingly, this [c]ourt finds that the defendants did not have a reasonable expectation of privacy in the common hallway of 180

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).

[3] State v. Nash, 74 N.J. Super. 510, 514 (Law Div. 1962).

A-4710-16T3

Walnut Avenue and, therefore, [Detective] Steever and [Detective] Astbury properly entered the residence to conduct an investigation.

[Detective] Steever testified that upon arrival at 180 Walnut Avenue, [Anderson] was detained on the front porch while he located the item that she discarded. He testified that while he found the item to be a set of keys, he observed [defendant] enter the common hallway from the basement area of the dwelling, attempting to access the first floor apartment. [Detective] Steever testified that both he and [Detective] Astbury told [defendant] to show his hands. He then placed his hands on the wall. The officers patted him down without incident or locating any contraband. See State v. Smith, 155 N.J. 83, 91 (19[9]8), State v. Thomas, 110 N.J. 673 (1988) and State v. Walker, 282 N.J. Super. 11[1] (App. Div. 1995), holding that reasonable suspicion that defendant was engaged in wrongdoing, such as being in possession of illegal drugs, did not provide a reasonable basis for the belief that he might be armed or dangerous.

After [defendant] was frisked, [Detective] Steever testified that he believed a sweep was necessary for officer safety. The [c]ourt notes that [Detective] Steever testified that neither [Anderson] nor [defendant] were arrested nor were armed at this juncture in the police investigation. Furthermore, there was no testimony that either of the [detectives] observed any other individuals, either entering the premises or outside the premises being armed.

[Detective] Steever also testified that additional TAC officers were present on scene at the time the sweep was performed.[4]

In State v. Davila, 203 N.J. 97 (2010), the New Jersey Supreme Court held, that while it's not necessary to conduct a protective sweep incident to arrest, to permit a protective sweep whenever officers are lawfully within the premises without limitations, risks swallowing whole the statutory aims of requiring an advance warrant to search. A protective sweep may only occur when (1) police officers are lawfully within private premises for a legitimate purpose which may include consent to enter and (2) the officers on scene have a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger. Where those substantive conditions are met, the sweep will be upheld only if it is (1) conducted quickly and (2) it is restricted to places or areas where the person posing a danger would hide.

When an arrest is not the basis for officer entry, the legitimacy of the police presence must be carefully examined, as well as the asserted reasons for the protective sweep. The police cannot create the danger that becomes the basis for a protective sweep but, rather, must be able to point to dangerous circumstances that developed once the officers were at the scene. That's [Davila, 203 N.J. at 102-03].

This [c]ourt finds that while the [detectives] were lawfully in the premises at the time of the sweep, the reasons for conducting the sweep were pretextual. The [c]ourt finds that the [detectives] did not have a

---

[4] TAC refers to the Trenton Police Department's Tactical Anti-Crime Unit, which is no longer in existence.

reasonable, articulable suspicion that the area to be swept harbored an individual posing a danger. There was nothing leading up to the sweep to lead the [detectives] to believe that someone on the premises was armed and dangerous. [Detectives] observed what appeared to be a narcotics transaction without any evidence that anyone was armed.

The State filed a motion for reconsideration arguing that the plain view exception should have been presented here.[5] The motion judge reversed himself, granted the State's motion for reconsideration, and denied defendant's suppression motion on the grounds that he did not have an expectation of privacy in the common hallway and the evidence was observed in plain view by the detectives.

The motion judge held:

The State set forth portions of [Detective] Steever's testimony by way of motion here and transcript which it believes the [c]ourt inadvertently overlooked. According to the State, this testimony demonstrates that [Detective] Steever observed the recovered contraband in plain view while he was lawfully in the common hallway of 180 Walnut Avenue. Neither of the defendants has submitted a reply brief opposing the State's arguments.

---

[5] In State v. Puryear, 441 N.J. Super. 280, 293 (App. Div. 2015), we held that "[t]he court has the discretion and right to reconsider an interlocutory ruling at any time before the entry of final judgment in 'the sound discretion of the [] court to be exercised in the interests of justice.'" 441 N.J. Super. 280, 293 (App. Div. 2015) (alteration in original) (quoting State v. Timmendequas, 161 N.J. 515, 554 (1999)).

A-4710-16T3

To prove plain view, the State must show: One, that the officer was lawfully in the viewing area; two, the discovery of the evidence was inadvertent, meaning the officer did not know in advance where the evidence was located, nor intend beforehand to seize it; and three, the officer must have probable cause to associate the property with criminal activity. State v. Mann, 203 N.J. 328, [338, 339] (2010); State v. Lane, 393 N.J. Super. 132[, 144] ([App. Div.] 2007).

The State argues that [Detective] Steever lawfully viewed the items using a flashlight to illuminate the open doorway of the basement stairwell while he was standing in the common hallway of 180 Walnut Avenue. Although [Detective] Steever originally testified that he discovered the evidence while performing a protective sweep for officer safety, upon further questioning by the State, [Detective] Steever stated he was able to observe the evidence by using a flashlight from "the top area before proceeding down the steps." . . . .

As the State argues, it is well[-]settled that the use of artificial light to illuminate [a] dark area does not constitute a search pursuant to the Fourth Amendment. See Texas v. Brown, 460 U.S. 7[3]0 ([1]983) holding that illuminating the interior of a vehicle with a flashlight does not constitute a search. See also State v. Reininger, 430 N.J. Super. 517 ([App. Div.] 2013).

This [c]ourt previously held that the [detectives] were lawfully in a common hallway of 180 Walnut Street in accordance with [Nash, 74 N.J. Super. at 514].

Our courts have held that when officers observe evidence from a common hallway of an apartment building, their vantage point is permissible. State v.

10

Smith, 37 N.J. 481[,] 496 (1962); see also State v. Cleveland, 371 N.J. [Super.] 286, [301] ([App. Div.] 2004) . . . that observation from a common hallway into an open motel room is permissible.

Based upon a review of his testimony, the [c]ourt finds that [Detective] Steever's initial observations were made while he was lawfully in the viewing area of the common hallway.

Next, [Detective] Steever's discovery of the evidence was inadvertent. Although [Detective] Steever observed the defendants engage in suspected narcotics transactions before entering the residence, he did not have advance knowledge about any location of any of the evidence. [Detective] Steever testified that he observed this evidence after he shined a flashlight down the stairway of an open basement door . . . .

While [Detective] Steever had reason to believe that there was illegal contraband in the residence because he observed the defendants engage in suspected narcotics transactions before entering 180 Walnut Avenue, he did not have advance knowledge about the location of any of the residents, and the [c]ourt finds that the inadvertent prong is met because it is not being used as a pretext to assert plain view. See State v. Damplias, 282 N.J. Super. 471[, 478] (1995).

Finally, [Detective] Steever had probable cause to seize the gun because it was illegal in nature as it was immediately apparent. In accordance with N.J.S.A. 2C:58-4[(a)], [a] permit is required to carry a handgun.

In addition, [Detective] Steever had probable cause to seize the quantity of suspected CDS crack cocaine in plastic bags, socks containing CDS marijuana, two digital scales and $309. The suspected

11

CDS crack and marijuana are illegal narcotics pursuant to N.J.S.A. 2C:35-10, et seq.

The illegal nature of the scales and money was also immediately apparent based upon [Detective] Steever's training and experience as items used in illegal drug activity.

Based on the foregoing, the [c]ourt amends its previous conclusion based on [Detective] Steever's testimony that was previously overlooked. Although [Detective] Steever subsequently engaged in an unwarranted protective sweep of the premises, his testimony confirms that he initially viewed the evidence in plain view while he was lawfully standing in the common hallway of 180 Walnut Avenue.

Accordingly, the [c]ourt's initial opinion is amended to reflect this new conclusion. The defendant's motion to suppress is denied.

## II.

Our review of the denial of a suppression motion is limited. State v. Handy, 206 N.J. 39, 44-45 (2011). In reviewing a trial judge's ruling on a motion to suppress, "an appellate court . . . must uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243 (2007) (quoting State v. Elders, 386 N.J. Super. 208, 228 (App. Div. 2006)). This court "should not disturb the trial court's findings merely because 'it might have reached a different conclusion were it the trial tribunal' or because 'the trial court

12

decided all evidence or inference conflicts in favor of one side' in a close case." Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). Issues of law, however, are reviewed de novo. State v. Gandhi, 201 N.J. 161, 176 (2010).

Defendant first argues that the warrantless search resulting in the discovery of the contraband does not fall within any recognized exception to the warrant requirement, necessitating reversal. We disagree.

"Warrantless seizures and searches are presumptively invalid as contrary to the United States and the New Jersey Constitutions. Both constitutional standards require that such seizures or searches be conducted pursuant to a warrant issued upon a showing of probable cause." State v. Pineiro, 181 N.J. 13, 19 (2004) (citations omitted). "Because our constitutional jurisprudence evinces a strong preference for judicially issued warrants, the State bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure [into a dwelling] 'falls within one of the few well-delineated exceptions to the warrant requirement.'" Elders, 192 N.J. at 246 (quoting Pineiro, 181 N.J. at 19-20).

"[A] 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person

might be hiding." Davila, 203 N.J. at 113 (quoting Maryland v. Buie, 494 U.S. 325, 327 (1990)). "A protective sweep may only occur when (1) police officers are lawfully within private premises for a legitimate purpose, which may include consent to enter; and (2) the officers on the scene have a reasonable articulable suspicion that the area to be swept harbors an individual posing a danger." Id. at 102. Such reasonable articulable suspicion may stem from multiple factors such as the suspect's presence in a high-crime or narcotics-heavy area, See Illinois v. Wardlow, 528 U.S. 119, 124 (2000); State v. Moore, 181 N.J. 40, 45-47 (2004), or the suspect's furtive or suspicious movements when confronted by the police, see State v. Lund, 119 N.J. 35, 48 (1990).

Davila further instructs that:

> when an arrest is not the basis for officer entry, the legitimacy of the police presence must be carefully examined as well as the asserted reasons for the protective sweep. Enhanced precautions are necessary to stem the possibility that a protective sweep is nothing more than an unconstitutional warrantless search. The police cannot create the danger that becomes the basis for a protective sweep, but rather must be able to point to dangerous circumstances that developed once the officers were at the scene. Where police are present in a home in a non-arrest context, there is too great a potential for the pretextual use of a protective sweep to turn an important tool for officer safety into an opportunity for an impermissible law enforcement raid.
>
> [203 N.J. at 103.]

14

With respect to the scope of protective sweeps, the police may sweep the "spaces immediately adjoining the place of arrest from which an attack could be immediately launched[,]" even in the absence of probable cause or reasonable suspicion. Buie, 494 U.S. at 334. Any wider sweep must be justified by "specific facts that would cause a reasonable officer to believe there is an individual within the premises who poses a danger" to the arresting officers. Davila, 203 N.J. at 115. Second, the sweep must be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Buie, 494 U.S. at 327. Although the sweep "is not a search for weapons or contraband," such items may be seized if observed "in plain view" during the sweep. Davila, 203 N.J. at 115. "Last, the sweep should last 'no longer than is necessary to dispel the reasonable suspicion of danger' or 'to complete the arrest and depart the premises.'" State v. Cope, 224 N.J. 530, 548 (2016) (quoting Davila, 203 N.J. at 115).

Defendant argues the detectives unlawfully conducted a protective sweep in an area that the detectives did not have a right to be in: the common hallway. There is nothing in the record to suggest that the detectives did not have adequate reasonable suspicion to perform a Terry stop and enter the common hallway. Instead, defendant contends he had a privacy interest in the common hallway, which rendered the entry unlawful, arguing that "[t]he State did not, and could not, claim

either that the police had either consent to enter the house, or, in the absence of any visible contraband, the 'exigent circumstances' otherwise required for entry into an area carrying a 'reasonable expectation of privacy.'"

Reasonable suspicion may be derived from a combination of factors, each of which, taken in isolation, may be consistent with completely innocent behavior but, in the aggregate, amount to reasonable suspicion. See Terry, 392 U.S. at 22-23. Moreover, the detectives had a reasonable and articulable suspicion that defendant and Anderson were engaged in some form of criminal activity because the detectives observed several individuals being escorted by them into their building for brief periods of time, repeatedly around 1:00 a.m. The area had a reputation for being a high crime, narcotics-heavy area, which only reinforced the detectives' reasonable belief that the suspicious activity they were witnessing was the sale of narcotics.

We are satisfied the record supports the finding that the detectives had a valid, reasonable and articulable suspicion that defendants were involved in narcotics transactions, and their furtive behavior following the detectives' approach unquestionably gave them the right to detain defendants and perform a protective sweep.

Defendant's argument that the common hallway provides a reasonable expectation of privacy, superseding the detectives' reasonable suspicion, is

16

unpersuasive. The motion judge aptly concluded defendant had no reasonable expectation of privacy in the common hallway, and case law supports this conclusion. See Smith, 37 N.J. at 496 (noting police officers may enter common passageways in multi-family homes in furtherance of an investigation); State v. Ball, 219 N.J. Super. 501, 506-07 (App. Div. 1987) (holding one does not have a reasonable expectation of privacy in areas that are also used by other occupants); State v. Jordan, 115 N.J. Super. 73, 75 (App. Div. 1971) (holding one does not have a reasonable expectation of privacy in the common hallways of hotels and city apartment buildings). The concept of diminished privacy expectations often associated with a porch, for example, is akin to that of the common hallway here. See e.g., State v. Johnson, 171 N.J. 192, 209-10 (2002).

Defendant cites to an unpublished decision in support of his argument, which does not constitute precedent and is not binding. Trinity Cemetery Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001); R. 1:36-3. We are satisfied that the actions taken by the detectives here were authorized and in keeping with the Court's holding in Davila.

Defendant next argues the motion judge erred in finding that the contraband was validly seized by the detectives under the plain view exception to the warrant requirement. We disagree.

Under the plain view exception, three requirements must be satisfied: (1) "the police officer must be lawfully in the viewing area"; (2) "the officer has to discover the evidence 'inadvertently,' meaning that he did not know in advance where evidence was located nor intend beforehand to seize it"; and (3) "it has to be 'immediately apparent' to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure." Mann, 203 N.J. at 341 (quoting State v. Bruzzese, 94 N.J. 210, 236 (1983)).

With respect to the third requirement, "in order to seize evidence in plain view[,] a police officer must have probable cause to associate the [item] with criminal activity." Ibid. (second alteration in original) (quoting Bruzzese, 94 N.J. at 237). We already stated that the motion judge duly found the detectives were lawfully in the common hallway, pursuant to their reasonable suspicion, and defendants had a diminished privacy expectation in that area.

Defendant next argues the record does not support the motion judge's conclusion that the detectives saw the contraband in question before they descended the stairwell and shined their flashlight on the shelf containing the contraband. While the record suggests that Detective Steever's testimony regarding this incident differed on direct and cross-examination, it is not contradictory, and supports the conclusion that the officers viewed the contraband, with the use of a flashlight, from

the top of the basement staircase, without descending the stairs. The detectives plainly and inadvertently viewed the contraband from an area where they were lawfully situated.

There is ample credible evidence in the record supporting the motion judge's finding that the warrantless search fell within the plain view exception and defendant's motion to suppress was duly denied.

III.

In Point II, defendant argues for the first time on appeal that the trial judge erred in allowing lay testimony to admit a laboratory certificate into evidence. We review this issue under the plain error standard of review. R. 2:10-2; State v. Macon, 57 N.J. 325, 336 (1971). We will reverse on the basis of an unchallenged error only if it was "clearly capable of producing an unjust result." Macon, 75 N.J. at 337. To reverse for plain error, we must determine that there is a real possibility that the error led to an unjust result, that is, "one sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." Id. at 336. We conclude that the error asserted in this Point does not rise to the level of plain error. Nevertheless, we address defendant's argument for the sake of completeness.

Defendant contends that Detective Steever's lay testimony was improper and "sufficiently prejudicial to necessitate reversal." Admission of the laboratory

certificate was not objected to at trial and was submitted under N.J.S.A. 2C:35-19(c), which provides:

> Whenever a party intends to proffer in a criminal or quasi-criminal proceeding, a certificate executed pursuant to this section, notice of an intent to proffer that certificate and all reports relating to the analysis in question, including a copy of the certificate, shall be conveyed to the opposing party or parties at least [twenty] days before the proceeding begins. An opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection and the grounds for the objection within [ten] days upon receiving the adversary's notice of intent to proffer the certificate. Whenever a notice of objection is filed, admissibility of the certificate shall be determined not later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and specific grounds for that objection that the composition, quality, or quantity of the substance submitted to the laboratory for analysis will be contested at trial. A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate. The time limitations set forth in this section shall not be relaxed except upon a showing of good cause.

After explaining how evidence is submitted to a laboratory by law enforcement officers, Detective Steever identified the certificate, which was projected on a large screen for the jury, identified the document, and read the results therefrom.

By stipulation of counsel, and as confirmed by the trial judge during a pretrial conference, counsel agreed to admit the laboratory certificate into evidence through Detective Steever without the need for the forensic scientist, David Dupnock, to authenticate same. Defendant's attorney responded, "[t]hat's correct, Your Honor," in confirming the State's proffer. Dupnock's name remained on the witness list because he was referenced in the laboratory certificate even though the record clearly reflects that "the State is not going to call him as a witness." The certificate was identified by Detective Steever as, "the certified lab report from the New Jersey State Police, Office of Forensic Science," and moved into evidence without objection.

We disagree with defendant that Detective Steever's reading of the laboratory test results at trial was inadmissible lay testimony purporting to interpret the report as an expert. N.J.S.A. 2C:35-19(b) provides:

> [The] certificate shall be sworn to before a notary public or other person empowered by law to take oaths and shall contain a statement establishing the following: the type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; and the nature and condition of the equipment used.

In <u>State v. Simbara</u>, 175 N.J. 37, 43 (2002), our Supreme Court held that, "the statute provides a procedural framework within which a trial court may admit into evidence in a drug case an uncontested certificate containing the information set forth in the portion of the statute cited above." A defendant seeking to object to the admission of a certificate must provide notice to prosecutors within ten days of receiving the State's initial notice. <u>Ibid.</u>

The statutory mandate was followed by the prosecutor and the trial judge dealt with this evidentiary issue appropriately. No plain error is shown here. Defendant not only waived his right to confront the forensic witness, he stipulated to Detective Steever as the authenticating witness. Rule 701 states:

> If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue.
>
> [N.J.R.E. 701.]

Detective Steever's testimony did not amount to lay testimony, let alone expert testimony, because he did not give any opinions or defend the laboratory results. He simply read the contents of the certificate into the record after laying a foundation. As noted in <u>Simbara</u>: "The statute merely establishes the mechanism by which a trial court ultimately will determine whether a genuine

contest exists between the parties in respect of the proffered certificate that would require production of the analyst." 175 N.J. at 48-49.

A trial judge has broad authority to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence . . . ." N.J.R.E. 611(a). "Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings." State v. Morton, 155 N.J. 383, 453 (1998). It is undisputed that a court's admission of evidence is an exercise in discretion that will not be reversed absent abuse of that discretion. State v. Wakefield, 190 N.J. 397, 426 (2007) (quoting State v. Nelson, 173 N.J. 417, 470 (2002)). In this case, admission of the laboratory report by stipulation through Detective Steever did not unfairly prejudice defendant and we find no plain error.

## IV.

In Point III, defendant argues that the judge's imposition of a discretionary extended term was improper and "fundamentally deficient" because the entire range of sentences applicable for his third-degree offense, three to ten years, was not properly assessed.

At the time of defendant's sentencing, the judge considered defendant's eight arrests and convictions for failure to give CDS to the police, causing bodily

harm, possession of marijuana, illegal occupancy, and two counts of obstruction of justice, as well as his six municipal court convictions and two open municipal court disorderly persons warrants out of Trenton. The sentencing judge granted the State's motion for the court to exercise its discretion under N.J.S.A. 2C:44-3(a) and sentenced defendant to an aggregate term of eighteen years with nine years of parole ineligibility. In doing so, the court recited in detail each of defendant's prior convictions and sentences, and applied aggravating as well as mitigating factors argued by defendant. The court concluded that the aggravating factors, (three, six, and nine) outweighed the mitigating factors, which were absent.[6] The judge also noted defendant's use of alcohol, marijuana, and cocaine from the time he was a teenager until 2013.

According to defendant, the judge also erred by failing to weigh defendant's prior record of conviction in qualifying him as a persistent offender and "double counted" to justify an elevated base term. We disagree and see no reason to disturb defendant's sentence.

---

[6] The sentencing court found three aggravating factors and no mitigating factors: (1) aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (the risk existed that defendant will reoffend); (2) aggravating factor six, N.J.S.A. 2C:44-1(a)(6) (the extent of defendant's prior criminal record and the seriousness of the offenses); and (3) aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (the need to deter defendant and others from violating the law).

Citing defendant's extensive criminal history and the fact that defendant was over the age of twenty-one when he committed these offenses, was previously convicted on two separate occasions of crimes when he was over the age of eighteen, and was released from prison within ten years of the present offense, we are satisfied the judge did not violate the sentencing guidelines. Defendant could have been exposed to an expanded sentence of five to ten years on a second-degree conviction, and five to twenty years as a persistent offender as stated in the State's sentencing memorandum. His five third-degree convictions could have been expanded to between three and ten years. Even within the extended term, the sentence was within a reasonable range.

Our review of sentencing determinations is limited and is governed by the "clear abuse of discretion" standard. State v. Roth, 95 N.J. 334, 363 (1984). That standard applies equally to a court's decision to sentence an eligible defendant in the extended term. See State v. Young, 379 N.J. Super. 498, 504 (App. Div. 2005). We are bound to uphold the trial court's sentence, even if we would have reached a different result, "unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found . . . were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts . . . makes the sentence clearly unreasonable so as to

shock the judicial conscience.'"  State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting Roth, 95 N.J. at 364-65).

Applying these controlling principles, we conclude the judge properly applied the sentencing guidelines, engaged in a comprehensive analysis of defendant's eligibility for sentencing as a persistent offender under N.J.S.A. 2C:44-3(a), see State v. Hudson, 209 N.J. 513, 526-27 (2012), and considered each of the applicable aggravating and mitigating sentencing factors.  Moreover, the court's findings were supported by the record and the sentence imposed did not "shock [our] judicial conscience."  Roth, 95 N.J. at 364.

To the extent that we have not specifically addressed any of defendant's remaining contentions, we conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4710-16T3